PEEBLES ET AL., APPELLANTS, *v.*
CLEMENT ET AL., APPELLEES.

[Cite as Peebles v. Clement (1980), 63 Ohio St. 2d 314.]

(No. 79-886—Decided July 31, 1980.)

*Messrs. Brandabur, Campbell, Finlay, Johnson, McCormick & Weckstein* and *Mr. J. Timothy Campbell,* for appellants.

*Mr. Howard D. Fields,* for appellees.

CELEBREZZE, C. J. R. C. Chapter 2715, among other things, provides the procedure whereby a plaintiff, at or after the time of filing a complaint for money damages, can attach a defendant's property before judgment has been rendered.

The grounds for such attachments are delineated in R. C. 2715.01.*

R. C. 2715.03 provides the procedure for obtaining an order of attachment. It states as follows:

"An order of attachment shall be made by the clerk of the court in which the action is brought, in any case mentioned in section 2715.01 of the Revised Code, when there is filed in his office an affidavit of the plaintiff, his agent, or attorney, showing:

"(A) The nature of the plaintiff's claim;

"(B) That it is just;

"(C) The amount which the affiant believes the plaintiff ought to recover;

"(D) The existence of any one of the grounds for an attachment enumerated in such section.

"Such affidavit may be made before any person authorized to administer oaths whether an attorney in the case or not."

Ordinarily, the plaintiff must post a bond in double the amount of his claim for the order to issue pursuant to R. C.

---

* R. C. 2715.01 states in relevant part:

"In a civil action for the recovery of money, at or after its commencement, the plaintiff may have an attachment against the property, other than personal earnings, of the defendant upon any one of the following grounds:

"(A) Excepting foreign corporations which by compliance with the law therefore are exempted from attachment as such, that the defendant or one of several defendants is a foreign corporation;

"(B) That the defendant is not a resident of this state;

"(C) That the defendant has absconded with the intent to defraud his creditors;

"(D) That the defendant has left the county of his residence to avoid the service of a summons;

"(E) That the defendant so conceals himself that a summons cannot be served upon him;

"(F) That the defendant is about to remove his property, in whole or part, out of the jurisdiction of the court, with the intent to defraud his creditors;

"(G) That the defendant is about to convert his property, in whole or part, into money, for the purpose of placing it beyond the reach of his creditors;

"(H) That the defendant has property or rights in action, which he conceals;

"(I) That the defendant has assigned, removed, disposed of, or is about to dispose of, his property, in whole or part, with the intent to defraud his creditors;

"(J) That the defendant has fraudulently or criminally contracted the debt, or incurred the obligations for which suit is about to be or has been brought;

"(K) That the claim is for work or labor, or for necessaries;

"(L) That the defendant has not complied with the provisions of sections 1306.01 to 1306.09, inclusive, of the Revised Code, relating to bulk transfers."

2715.04. A defendant can execute a bond or deposit currency or negotiable government bonds in double the amount of plaintiff's claim and discharge the attachment pursuant to R. C. 2715.26. A defendant may also move to discharge the attachment pursuant to R. C. 2715.44, at which time he is entitled to a hearing on the matter.

The courts below found that the procedure, as used to attach appellees' bank accounts and personal property, unconstitutionally denied appellees their right to due process of law. Appellants claim that appellees waived any right they had to assert procedural due process rights by waiting a year to make their motion to dismiss the attachment. However, if the attachment was constitutionally invalid at the time it was made because appellees were not accorded sufficient procedural safeguards, it is equally invalid one year later and can be dismissed by a court at that time.

In providing that no state shall "deprive any person of life, liberty, or property, without due process of law," the Fourteenth Amendment to the United States Constitution requires that substantial procedural safeguards be provided in our legal system before one may be deprived of a property right. Section 16 of Article I of the Ohio Constitution, states, in part that: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." When read in conjunction with Sections 1 and 19 of Article I, Section 16 provides substantially the same safeguards as does the Fourteenth Amendment. *State, ex rel. Heller,* v. *Miller* (1980), 61 Ohio St. 2d 6.

The requirements of due process are flexible. Procedures must be designed to protect substantial rights, but often a conflict of rights exists and must be resolved within the procedural framework; both sides must be protected. This is often the case in attempts to seize property prior to a judgment. There may be a legitimate reason to allow such seizures in order to protect the creditor; however, the debtor has substantial rights in the property of which he is being deprived.

The balancing of interests which is involved in assessing the validity under the Due Process Clause of statutes authoriz-

ing prejudgment seizure of property has been before the United States Supreme Court four times in the past eleven years. Due to the difficulties inherent in balancing the parties' interests, the decisions do not delineate a clear set of rules to follow in such seizures. However, these four decisions do provide us with minimum requirements which must be followed to constitutionally seize property through the judicial process prior to judgment.

The first case, *Sniadach* v. *Family Finance Corp.* (1969), 395 U.S. 337, involved a Wisconsin wage garnishment statute. Under that statute the creditor, by filing a garnishment action, could cause the clerk of courts to issue a summons on a debtor's employer, ordering the latter to hold the debtor's wages, beyond what was deemed a subsistence amount, subject to the order of the court. The debtor had to be served with the summons and complaint within ten days of service on the garnishee, and the wages were frozen until the case was decided on the merits.

The Supreme Court held this procedure to be unconstitutional. It stated, at page 340, that this type of garnishment "is a taking which may impose tremendous hardship on wage earners with families to support." Because the case involved such an obvious taking, the court held that notice and a prior hearing were required under the Due Process Clause.

The second case, *Fuentes* v. *Shevin* (1972), 407 U.S. 67, involved Florida and Pennsylvania statutes which allowed summary seizure of goods or chattels upon an *ex parte* application for a writ of replevin. In both states the writ of replevin could be obtained through the clerk of courts upon the assertion that one was lawfully entitled to possession and the posting of a security bond. In Florida, an action for repossession had to be commenced, and as a consequence a hearing was required to be held on the merits of the claim. In Pennsylvania no other action was required; a party losing property had to initiate a lawsuit himself to get a hearing on the merits. Both statutes had procedures allowing the posting of a counterbond within three days of the seizure.

The court stated that even a temporary taking of property was a deprivation under the Due Process Clause, and that a defendant in such cases was entitled to due process protec-

tions. Because of the especially great danger of mistaken or unfair deprivations of property which exists when the state seizes goods blindly upon the application of a private party, the court held that the statutes violated the Due Process Clause insofar as they denied parties an opportunity to be heard prior to the taking, citing *Sniadach* in support of the holding.

In *Fuentes,* the court did recognize a limited class of cases in which hearings are not required because the seizure is directed at an important governmental or public interest, because prompt action is necessary, and because the seizure is ordered by a governmental official who under narrowly drawn standards is responsible for determining that such action is necessary and justified. In recognizing this limited class of cases, the court indicated that it would balance the interests of the parties to determine what was required in order to make a prejudgment seizure valid under the Due Process Clause. In balancing the interests, the court held that in cases involving important governmental interests, a prior hearing was not required.

The third case, *Mitchell* v. *W. T. Grant Co.* (1974), 416 U.S. 620, involved a Louisiana statute which allowed a possessor of a vendor's lien to seize property subject to the lien. Under the statute a judge had to find that an affidavit filed by the lienholder, based on his personal knowledge, clearly showed a necessity for the seizure. The debtor could possess the property by posting bond or by seeking dissolution of the writ at which point the creditor was required to substantiate the grounds upon which the writ was issued in an immediate hearing.

The court, which had held that procedural requirements could be modified by the presence of important governmental interests in *Fuentes,* recognized in *Mitchell* the important rights a lienholder could have in property. This was particularly true in Louisiana where the rights of the lienholder were dissolved if the debtor transferred the property.

In balancing the conflicting rights of the parties, the court held that the Louisiana sequestration procedure did not violate the Due Process Clause, largely because of the presence of pre-seizure judicial supervision and of an immediate post-seizure right to a hearing. The court, at page 611, quoting

from *Phillips* v. *Commissioner* (1931), 283 U.S. 589, 596-597, stated that:

"[T]he usual rule has been '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.' "

The fourth case, *North Georgia Finishing, Inc.,* v. *Di-Chem, Inc.* (1975), 419 U.S. 601, involved a Georgia statute which allowed a plaintiff in a pending suit to obtain a writ of garnishment from the clerk of courts, garnishing a bank account, by posting a bond and filing an affidavit stating the amount claimed in the action and that he has reason to apprehend loss of the amount unless the writ was issued.

The court held, at page 608, that even in the seizure of corporate bank accounts "the probability of irreparable injury***is sufficiently great so that some procedures are necessary to guard against the risk of initial error." The court stated, at page 607, that because the procedure in Georgia did not provide, as did the Louisiana statute which was before the court in *Mitchell,* that the writ be issued "only by a judge upon the filing of an affidavit going beyond mere conclusory allegations and clearly setting out the facts entitling the creditor to sequestration," and because the Georgia law did not require as did the Louisiana law that the debtor be entitled "to an immediate hearing after seizure and to dissolution of the writ absent proof by the creditor of the grounds on which the writ was issued," the Georgia statute violated the Due Process Clause.

It is clear that the attachment procedure in R. C. Chapter 2715 involves the same type of deprivation of property as was involved in the Supreme Court cases discussed above. There is no logical basis for imposing procedural due process requirements on a statute providing for garnishment of a bank account, as the court did in *Di-Chem,* and not imposing them on a statute under which bank accounts and personal property can be seized. In addition, in *Fuentes, supra,* and again in *Di-Chem,* the court made it clear that it would not attempt to distinguish among the different kinds of property in applying the Due Process Clause.

It is not clear whether the procedural safeguards which

the court approved in *Mitchell* are sufficient only for cases involving lien creditors. Such creditors have a strong interest in the property. It may be that prior notice and a hearing are required in the case of a non-lien creditor. However, the Louisiana procedure which was approved in *Mitchell* was used as a standard by which to review the Georgia statute in *Di-Chem*, and it does appear to provide a minimum standard by which to assess the validity of the prejudgment attachment procedure contained in R. C. Chapter 2715.

We join a number of other courts in holding that under *Mitchell* and *Di-Chem*, statutes providing for prejudgment attachment must at a minimum: (1) require plaintiff to furnish an appropriate bond or other security to compensate a defendant in the event of wrongful seizure; (2) require that an affidavit be filed alleging personal knowledge of specific facts forming a basis for prejudgment seizure; (3) require that a judicial officer pass upon the sufficiency of the facts alleged in the affidavit; (4) provide for dissolution of the seizure upon the posting of a bond by defendant; and (5) provide an immediate right of hearing to the defendant in which plaintiff must prove that the seizure is warranted. *Jonnet* v. *Dollar Savings Bank of New York* (C.A. 3, 1976), 530 F. 2d 1123; *Unique Caterers, Inc.,* v. *Rudy's Farm Co.* (Fla. 1976), 338 So. 2d 1067; *Hillhouse* v. *Kansas City* (1977), 221 Kan. 369, 559 P. 2d 1148; *Sharrock* v. *Dell Buick* (1978), 45 N.Y. 2d 152, 408 N.Y. Supp. 39 (involving garagemen's liens); *Bank of Pleasant Grove* v. *Johnson* (Utah 1976), 552 P. 2d 1276.

Although it is well established that a statute is entitled to a strong presumption of constitutionality, *State* v. *Renalist, Inc.* (1978), 56 Ohio St. 2d 276, 278, this court, in interpreting a statute cannot simply rewrite it to make it constitutional. *Seeley* v. *Expert, Inc.* (1971), 26 Ohio St. 2d 61, 71.

R. C. 2715.03 clearly requires the clerk of courts to issue the order of attachment without any form of judicial review. Although we might be able to construe other provisions in R. C. Chapter 2715, without rewriting them, in a manner in accordance with the minimum standards of due process set forth in *Mitchell* and *Di-Chem*, we cannot, without rewriting R. C. 2715.03, impose judicial review on the prejudgment attachment process.

322

We hold that the prejudgment attachment procedure provided for in R. C. Chapter 2715 fails to give a defendant sufficient due process guarantees under the United States and Ohio Constitutions due to the failure of the statute to provide for judicial supervision of the procedure.

The judgment of the Court of Appeals is modified insofar as it limits its ruling to the facts in the case at bar, and, as modified, affirmed.

*Judgment affirmed,*
*as modified.*

HERBERT, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

HOLMES, J., dissents.