**Susan H. DARRAH–WANTZ and Louis F. O'Brien, Plaintiffs,**

**v.**

**Samuel A. BROWN, Defendant.**

**No. 5 91 CV 00071 (JAC).**

United States District Court,
D. Connecticut.

June 28, 1991.

Stephen P. Flott, Washington, D.C., for plaintiffs.

Victor L. Zimmerman, Stamford, Conn., for defendant.

## RULING ON PLAINTIFF'S MOTION FOR PREJUDGMENT ATTACHMENT

F. OWEN EAGAN, United States Magistrate Judge.

The present action, involving the sale of units in certain limited partnerships, comes before this court on the plaintiffs' motion for prejudgment attachment. The court finds that the plaintiffs have met their burden of proving that there is probable cause to sustain the validity of their claims, and hereby grants their applications for a writ of attachment of the defendant's interest in certain real estate in accordance with the following memorandum and order.

## I. FACTUAL BACKGROUND

After a two day hearing and review of the exhibits and pleadings, the court finds the following facts. The plaintiffs, Susan Darrah–Wantz and Louis F. O'Brien, are residents of Pennsylvania and Maryland, respectively. The defendant, Samuel Brown, is a former employee of Colonial Realty Corporation, where he was employed as a salesman, selling limited partnership interests in Colonial's various real estate ventures. All of the limited partnerships were considered to be high risk investments not suitable for unsophisticated investors or persons with little net worth.

Sometime in the fall of 1988, Mr. Brown became involved in a personal relationship with a sister of Mr. O'Brien. During the Thanksgiving and Christmas holidays in 1988, Mr. Brown met Mr. O'Brien, and at some point the two began discussing Mr. Brown's line of work and the possibility of Mr. O'Brien's investing in Colonial Realty limited partnerships. In February, 1989, Mr. Brown sent a prospectus and registration forms, known together as a private placement memorandum ("PPM"), to Mr. O'Brien for the purpose of having Mr. O'Brien purchase a limited partnership interest in a Colonial Realty partnership. The prospectus indicated that the investment in this limited partnership was of high risk, and the PPM indicated that only accredited investors or persons with substantial net worth could purchase a limited partnership. Although Mr. Brown disputes this claim, Mr. O'Brien testified that Mr. Brown told him that he did not have to read the prospectus, and only had to sign the application pages in the spaces indicated by Mr. Brown. Mr. Brown was not present when Mr. O'Brien filled out the application. Upon the advice of Mr. Brown, Mr. O'Brien left substantial portions of the application blank.

Because the application forms indicated that, to qualify for a limited partnership, an applicant must have a net worth in excess of $1,000,000.00 or annual income in excess of $200,000.00, or must show that he or she has sufficient knowledge of investments, Mr. O'Brien did not expect to be accepted as a limited partner. At the time he filled out the partnership application, Mr. O'Brien was a partner in a floor tiling business from which he drew an annual salary of approximately $30,000.00. Mr. O'Brien did not own any real estate and he had only a few stocks. However, Mr. Brown filled in the financial information sections of the application, representing that Mr. O'Brien had a net worth in excess

of $1,500,000.00. Mr. Brown also altered the date on Mr. O'Brien's check and the application and added the signatures of two witnesses. Mr. O'Brien was accepted as a limited partner based upon the application as altered by Mr. Brown, and agreed to pay the sum of $63,075.00 in six annual installments. Mr. O'Brien made the first payment in November, 1989, but has not made any payments since that time.

Ms. Darrah–Wantz became a limited partner in a Colonial Realty venture in much the same way as detailed above. Mr. Brown sent her a PPM, including an application, by mail, and Ms. Wantz signed the form and filled in some of the financial information. Mr. Brown inflated Ms. Darrah–Wantz's net worth by changing several of the figures provided by Ms. Darrah–Wantz, filled in several dates, and notarized her application without her being present. Ms. Darrah–Wantz was accepted as a limited partner based upon the application as altered by Mr. Brown, and agreed to make six annual payments totalling $63,-650.00. Ms. Darrah–Wantz made the first such payment, but has not made any payments since that time.

In the fall of 1989, Mr. Brown contacted Mr. O'Brien and Ms. Darrah–Wantz about the purchase of limited partnership interests in another Colonial Realty venture. Mr. Brown made several oral representations as to the quality of these investments, and sent PPMs to Mr. O'Brien and Ms. Darrah–Wantz. Both filled out the applications and returned them to Mr. Brown, who again altered and inflated the net worth statements in the applications. Mr. O'Brien and Ms. Darrah–Wantz each promised to pay the sum of $63,650.00 over the course of six years, but to date they have made no payments on the second limited partnership venture.

On February 6, 1991, the plaintiffs filed suit against Mr. Brown, Colonial Realty, the three different limited partnerships in which they invested, and the general partners of the limited partnerships, alleging primarily statutory and common law fraud and breach of fiduciary duty. Also on February 6, 1991, the plaintiffs filed an application for a prejudgment attachment of Mr. Brown's real estate. The plaintiffs subsequently moved for voluntary dismissal of their claims against the Colonial Realty entities and the general partners, choosing to proceed solely against Mr. Brown. On April 1, 1991, the plaintiffs filed an amended complaint alleging ten causes of action against Mr. Brown. The court held a hearing on the attachment motion on May 17 and May 28, 1991, and the parties have filed post-hearing memoranda.

## II. DISCUSSION

Several issues are raised by the present application. First, in light of a recent decision of the United States Supreme Court, this court must determine whether the statute which ostensibly provides for the prejudgment relief sought by the plaintiffs deprives the defendant of due process. Second, if the court decides that the Connecticut prejudgment remedies statute passes constitutional muster, the court must determine whether the plaintiffs have satisfied their burden of proving that there is probable cause that their claim is valid. Finally, if the plaintiffs have carried their burden, then the court must fashion an appropriate order.

### A. Constitutionality of Prejudgment Statute

■ This court may award a prejudgment remedy in accordance with Connecticut state law. See Fed.R.Civ.P. 64; Local Rule 5(c). Connecticut's prejudgment remedies statute provides for the attachment of personal property to secure a potential money judgment. Conn.Gen.Stat. § 52–279. To obtain an attachment, the party seeking the attachment must initially file (1) a proposed writ, summons and complaint; (2) an application to the court for the attachment; (3) a form of order indicating that a hearing shall be held to determine whether the attachment should be granted and that the defendant be given notice of this hearing; and (4) a form of summons directing that the defendant be served with the aforementioned writ, summons, complaint, application and order.

Conn.Gen.Stat. § 52–278c(a). The statute also provides the forms which the application, order and summons should take. *See* Conn.Gen.Stat. § 52–278c(b).

Recently, the constitutionality of the prejudgment attachment process has come under scrutiny. In *Connecticut v. Doehr,* —— U.S. ——, 111 S.Ct. 2105, 115 L.Ed.2d 1 (June 6, 1991), the Supreme Court held that the provision in the prejudgment remedies statute allowing the ex parte attachment of property was an impermissible violation of a defendant's due process rights. As the defendant notes in this case, four justices in *Doehr* also stated that the lack of a requirement that a plaintiff post a bond to secure against an improvident attachment violates a defendant's due process rights. However, the five remaining justices did not reach the issue of whether a bond should be required in prejudgment attachments, nor does this court. The majority opinion in *Doehr* holds only that the ex parte attachment of real estate without providing the opportunity for a pre-attachment hearing violates due process. This court has held a pre-attachment hearing, and therefore has provided the defendant with all of the process he is due. *See generally Bergesen d.y. v. Lindholm,* 760 F.Supp. 976 (D.Conn.1991). The court finds that the Connecticut prejudgment remedies statute does not offend a defendant's due process rights insofar as it permits the attachment of property only after the defendant is afforded a hearing on the application for a writ of attachment. The court therefore will not set a bond in this case.

### B. Probable Cause

■ In order to obtain a prejudgment attachment, a plaintiff must establish that there is probable cause to sustain the validity of its claim. Conn.Gen.Stat. § 52–278d(a); *McCutcheon & Burr, Inc. v. Berman,* 218 Conn. 512, 525, 590 A.2d 438 (1991). The plaintiff must not only establish that he is likely to succeed on his claims, but also must establish the amount of his damages with reasonable certainty. *Ledgebrook Condominium Assn. v. Lusk Corporation,* 172 Conn. 577, 585, 376 A.2d 60 (1977). The court's role in such a hearing is to determine probable success by weighing probabilities. *Michael Papa Associates v. Julian,* 178 Conn. 446, 447, 423 A.2d 105 (1979). "Probable cause" as used in prejudgment remedy proceedings, has been defined by the Connecticut courts as "a *bona fide* belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." *Three S. Development Co. v. Santore,* 193 Conn. 174, 175, 474 A.2d 795 (1984) (citation omitted). The plaintiff does not have to prove his case by a preponderance of the evidence, but rather must only show that there is probable cause to sustain the validity of the claim. *New England Land Co., Ltd. v. De Markey,* 213 Conn. 612, 620, 569 A.2d 1098 (1990).

■ The witness testimony and documentary evidence presented at the hearing and summarized *supra* are more than sufficient to establish probable cause that the plaintiffs' claims are valid. Specifically, the court focuses upon the plaintiffs' claim under § 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2).[1] To prevail upon their § 12(2) claim, the plaintiffs must prove that Brown (1) sold or offered securities to the

---

**1.** Section 12(2) provides, in pertinent part, that any person who sells or offers to sell a security by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and

who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity ... to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

plaintiffs; (2) through interstate commerce; (3) by means of a prospectus or oral communications; (4) that contains an untrue statement or omits a material fact; (5) of which the plaintiffs were ignorant; and (6) of which the defendant knew or should have known. *See* 15 U.S.C. § 77l(2).

In this case, the defendant does not dispute that he sold securities to the plaintiffs through interstate commerce by means of a prospectus. Rather, the defendant disputes the claims that he misrepresented the nature of the Colonial Realty limited partnerships to the plaintiffs. However, in light of the evidence presented at trial, the court finds that the plaintiffs have established probable cause that the defendant intentionally misrepresented the nature of the partnerships. The court relies primarily upon the following: (1) the four limited partnership agreements which the plaintiffs signed with Brown's guidance and which were materially altered by Brown; (2) Brown's admission that he notarized at least one of the agreements without the plaintiff (Ms. Darrah–Wantz) being present; and (3) the plaintiffs' testimony as to their self-worth and knowledge of investments, which shows that they were unsophisticated unaccredited investors without the financial means to legitimately qualify as investors in real estate limited partnerships. The court finds probable cause that the plaintiffs' will prevail upon their claim that the defendant violated § 12(2) of the Securities Act of 1933.

The defendant argues that each prospectus provided to the plaintiffs for each of the limited partnerships in question clearly gives notice of the high risk nature of the investments. However, the plaintiffs both testified that they did not read any of the prospectuses because Mr. Brown told them that it was unnecessary to read them. The court finds that the plaintiffs' testimony on this issue was credible, and therefore finds that the existence of prospectuses is not fatal to the plaintiffs' claims.

In addition, the defendant argues that the plaintiffs' § 12(2) claim is barred by the applicable statute of limitations. A person alleging a cause of action under § 12(2) must bring the action within one year of the time when the plaintiff discovered, or with reasonable diligence should have discovered, the alleged untrue statement or omission. 15 U.S.C. § 77m; *In Re Energy Systems Equip. Leasing Sec. Litigation*, 642 F.Supp. 718, 744 (E.D.N.Y.1986). In this case, the plaintiffs have testified that the defendant misrepresented the nature of limited partnership investments, and that they did not discover the misrepresentations until they learned of the misconduct of the Colonial Realty general partners. The plaintiffs have alleged facts and have testified that they did not learn of the misconduct of the partners until sometime in the summer of 1990, when O'Brien received a letter cancelling an optional cash distribution from one of the partnerships, or the fall of 1990, when one of the general partners was arrested. The plaintiffs' filed their complaint in February, 1991, well within a year of the aforementioned events. The plaintiffs have shown that they are likely to prevail upon the statute of limitations claim.

Further, the court finds that the plaintiffs have proven that they are likely to recover damages of approximately $350,-000.00, which is less than the amount in which the plaintiffs seek to encumber the defendant's real property. The evidence presented at trial established that each of the plaintiffs owns two limited partnership units for which they have not paid. Mr. O'Brien owns one unit in the Colonial Capitol Center Limited Partnership, for which he owes the sum of $59,075.00. Ms. Darrah–Wantz owns one unit in the Colonial Mesa Limited Partnership, for which she owes the sum of $59,650.00. In addition, each plaintiff owns one unit in the Colonial Constitution Limited Partnership, for which each owes the sum of $63,650.00. Although the plaintiffs have suspended their annual payments on the notes which they signed in exchange for their ownership interests in each partnership, nothing in the record would indicate that the four notes are not due and owing. Thus, Mr. O'Brien appears to be liable to Colonial Realty (or its assigns) for the sum of $122,725.00, and Ms. Darrah–Wantz appears to be liable for

the sum of $123,300.00. These amounts are exclusive of interest and collection costs, including attorney's fees, which the notes indicate are available to Colonial Realty or its assigns. Although each plaintiff seeks an attachment in the amount of $225,000.00, for a total attachment of $450,000.00, the court finds that a joint attachment in the amount of $350,000.00 is well supported by the record and would be sufficient to assure both of the plaintiffs of recovery of their actual damages.

Finally, the court recognizes that the defendant has made numerous substantive challenges to the merits of each of the plaintiffs' claims, and has raised several questions related to applicable statutes of limitation and choices of law. Unfortunately, this case has been referred solely for the purpose of hearing argument on the plaintiffs' motion for prejudgment attachment. During the period in which the present motion was pending, the defendant filed an answer to the plaintiffs' amended complaint, thereby closing the pleadings. The defendant's legal arguments are best presented by filing a dispositive motion after the parties are afforded adequate time for discovery.

CONCLUSION

For the foregoing reasons, the plaintiffs' applications for prejudgment remedy (document nos. 19 and 20) are GRANTED. It is further ORDERED that the defendant shall, within fourteen days of receipt of this ruling, disclose to the plaintiffs the existence, location and extent of any property, as defined by Conn.Gen.Stat. § 52–278a(e), sufficient to satisfy a total judgment in the amount of $350,000.00. Within fourteen days after receipt of the defendant's disclosure, the plaintiffs shall file with the court one appropriate writ of attachment.