The STATE of Ohio, Appellee,

v.

BENSON, Appellant.

[Cite as *State v. Benson* (1992), 81 Ohio App.3d 697.]

Court of Appeals of Ohio,
Scioto County.

No. 91 CA 1990.

Decided July 6, 1992.

698

*Lynn A. Grimshaw,* Scioto County Prosecuting Attorney, and *R. Randolph Rumble,* Assistant Prosecuting Attorney, for appellee.

*Charles A. McCrae,* for appellant.

---

STEPHENSON, Presiding Judge.

This is an appeal from a judgment of conviction and sentence entered upon a jury verdict by the Scioto County Court of Common Pleas, finding Charles Benson, defendant below and appellant herein, guilty of two counts of sexual battery in violation of R.C. 2907.03(A)(5).[1] Appellant assigns the following errors:

"1. Defendant was denied due process of law, as Ohio Revised Code Section 2907.03(A)(5) is facially unconstitutional.

"2. Defendant was denied due process of law, as Ohio Revised Code Section 2907.03(A)(5) is unconstitutional as applied to defendant.

"3. The trial court erred in not instructing the jury on the definition of 'engage' as it applies to 2907.02(A)(5) [*sic*].

"4. Appellant was denied a fair trial as guaranteed by the Fourteenth Amendment to the United States Constitution due to misconduct by the prosecutor.

"5. The trial court erred by overruling the motion to suppress appellant's statements and responses." (Numbering by court.)

A review of the record reveals the following facts pertinent to this appeal. Appellant, Charles (Ronnie) Benson, is the stepfather of seventeen-year-old Bretta Howard. Bretta confided to an Elder at her church that appellant had been having sexual intercourse with her. Accompanied by a woman from her church, Bretta went to the prosecutor's office on April 3, 1991 and told the prosecutor's investigator that appellant had been having sex with her in exchange for social privileges, such as going out with her friends.

On April 12, 1991, appellant went to the prosecutor's office. He explained that he had heard that allegations had been made against him and he wanted, in effect, to set the record straight. Appellant admitted he had sexual

---

1. R.C. 2907.03 reads in pertinent part as follows:
   "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:
   " * * *
   "(5) The offender is the other person's natural or adoptive parent, or a stepparent, or guardian, custodian, or person in loco parentis."

intercourse with Bretta, but maintained that she had initiated it and had seduced him.

On April 30, 1991, an indictment was handed down by the Scioto County Grand Jury charging appellant with two counts of sexual battery in violation of R.C. 2907.03(A)(6). The indictment was amended to charge a violation under each count of R.C. 2907.03(A)(5) on June 13, 1991.

Appellant filed a motion on June 14, 1991, seeking to suppress any and all statements appellant made to the prosecutor's investigator. A hearing was held on appellant's motion on June 25, 1991. The court overruled appellant's motion by entry dated that same day.

The matter proceeded to a jury trial on July 1, 1991, and on July 2, 1991 the jury rendered its verdicts, finding appellant guilty of both counts. On that same day, the court entered judgment on the verdicts and sentenced appellant. Appellant filed a timely notice of appeal.

■ Appellant's first and second assignments of error will be considered jointly, as both address the constitutionality of the statute under which appellant was convicted. Appellant challenges the constitutionality of the statute, R.C. 2907.03(A)(5), on substantive due process grounds.[2] Appellant appears to contend that he has a fundamental right to private consensual acts of sexual intercourse, regardless of the degree of affinity between the parties. Therefore, in order to withstand a constitutional challenge, he argues the legislation must pass "strict scrutiny," i.e., the law must be necessary to promote a compelling governmental interest. Appellant contends that, even assuming the existence of a compelling governmental interest, because the statute does not provide for an age limit at which the other party may consent, the statute at issue is not the least restrictive means by which the government could regulate. Therefore, the statute must be held to be unconstitutional. We disagree.

■ As a starting point for our analysis, we must presume the constitutionality of the statute at issue. All legislative enactments enjoy a strong presumption of constitutionality. *Sedar v. Knowlton Constr. Co.* (1990), 49 Ohio St.3d 193, 551 N.E.2d 938; *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 28 OBR 346, 503 N.E.2d 717.

---

**2.** Appellant has failed to indicate in his brief whether he contends the statute violates the federal Constitution, the state Constitution, or both the federal and state Constitutions. This is not an impediment to our review of the issues, however, since the Ohio Constitution's guarantees of due process are substantially equivalent to those of the United States Constitution's. *State ex rel. Heller v. Miller* (1980), 61 Ohio St.2d 6, 15 O.O.3d 3, 399 N.E.2d 66; *Peebles v. Clement* (1980), 63 Ohio St.2d 314, 17 O.O.3d 203, 408 N.E.2d 689.

■ Next, we must determine whether appellant is guaranteed a fundamental right to engage in private acts of consensual sexual intercourse by the federal or Ohio Constitutions. Fundamental rights have been defined by the United States Supreme Court as "those fundamental liberties that are implicit in the concepts of ordered liberty such that neither liberty nor justice would exist if they were sacrificed." See *Palko v. Connecticut* (1937), 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288. The court has also found a fundamental right in "those liberties that are deeply rooted in this Nation's history and tradition." *Moore v. East Cleveland* (1977), 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531. It is clear that neither of these formulations would extend to appellant a fundamental right to any kind of private consensual sexual conduct.

In *Bowers v. Hardwick* (1986), 478 U.S. 186, 191, 106 S.Ct. 2841, 2844, 92 L.Ed.2d 140, 146, the Supreme Court stated that any claim that its prior cases stand for the proposition that any kind of private sexual conduct between consenting adults is constitutionally insulated from state proscription is unsupportable. The court went on to note that its opinion in *Carey v. Population Serv. Internatl.* (1977), 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675, twice asserted that the privacy right did not reach so far.

Accordingly, in the absence of state action impinging upon a fundamental right, a rational basis test is used to test the statute's constitutional validity. A legislative enactment will be deemed valid on due process grounds if it bears a real and substantial relationship to the public's health, safety, morals or general welfare and it is not unreasonable or arbitrary. *Mominee, supra,* 28 Ohio St.3d at 274, 28 OBR at 349, 503 N.E.2d at 720–721; *Benjamin v. Columbus* (1957), 167 Ohio St. 103, 4 O.O.2d 113, 146 N.E.2d 854, paragraph five of the syllabus.

R.C. 2907.03(A)(5) prohibits incestuous conduct, defining it in broader terms than formerly, so as to include not only sexual conduct by a natural parent with his child, but also sexual conduct by a stepparent with his stepchild, a guardian with his ward, or a custodian or person in loco parentis with his charge. We need hardly cite authority for the obvious conclusion that this statute bears a real and substantial relation to the public morals. We further find that R.C. 2907.03(A)(5) is neither unreasonable nor arbitrary. Accordingly, the Act is not facially unconstitutional.

■ Furthermore, the Act is not unconstitutional as applied to appellant. The fact that appellant was not permitted to assert the defense that Bretta consented to the sexual conduct did not make the Act unconstitutional as it applied to him since no fundamental constitutional right exists to engage in such conduct. Accordingly, appellant's first two assignments of error are overruled.

In his third assignment of error, appellant contends the court erred in refusing to give his proposed jury instruction. Appellant sought to define the word "engage" as it appears in R.C. 2907.03, so as to apply only to one who was the aggressor or initiator of sexual conduct. Appellant contends this was necessary in order to allow him to assert the defense of consent, since without allowing a consent defense, R.C. 2907.03(A)(5) is unconstitutional.

We disagree. As discussed above, R.C. 2907.03(A)(5) is not unconstitutional as it applies to appellant. That is, the failure to allow appellant to assert the defense of consent does not render the statute unconstitutional as applied to him. Accordingly, the court did not err in failing to give appellant's proposed instruction and appellant's third assignment of error is overruled.

In his fourth assignment of error, appellant contends he was denied a fair trial as guaranteed to him by the Fourteenth Amendment to the United States Constitution due to two separate incidents of prosecutorial misconduct.

The conduct of a prosecuting attorney during trial cannot be made a ground of error unless that conduct deprives the defendant of a fair trial. In order to withstand a prosecutorial misconduct challenge, it must be clear beyond a reasonable doubt that absent the conduct of the prosecution, the jury would have in any event found the defendant guilty. *State v. Maurer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492; *State v. Vrona* (1988), 47 Ohio App.3d 145, 547 N.E.2d 1189.

The first incident of alleged prosecutorial misconduct which appellant assigns as error occurred upon the prosecutor's cross-examination of appellant:

"BY MS. SHEDROFF:

"Q. Mr. Benson, in November 1990, you had sexual intercourse with Bretta Howard, didn't you?

"A. Bretta came onto me.

"Q. You had sexual intercourse with Bretta Howard?

"A. Bretta came onto me.

"Q. That's a yes or no.

"A. Bretta came onto me.

"THE COURT: Excuse me. Mr. Benson, the question is very straight forward. Your lawyer will have an opportunity to bring out further answers from you. The question is in November 1990 did you have sexual intercourse with Bretta. It's a straight forward question. I want you to answer.

"A. I don't remember if that was the month or not.

"Q. Have you had sexual intercourse with Bretta Howard?

"A. Yes.

"Q. Did you have sexual intercourse with Bretta Howard during the calendar year of 1990?

"A. 1990?

"Q. Yes.

"A. No.

"Q. Do you recall having spoken with Robert Kinker in the Prosecutor's Office and telling him you had had sexual intercourse with Bretta Howard in the Fall of 1990 and Spring of 1990?

"A. It wasn't in 1990.

"Q. When was it?

"A. Excuse me?

"Q. When was it?

"A. In '89."

Appellant contends that he became confused as to the year and answered incorrectly. Appellant argues that the prosecutor should have allowed appellant to clear up the confusion. We disagree.

From a review of this portion of the transcript, it is not obvious that appellant was confused when he answered that he and Bretta had engaged in sexual conduct in 1989. In fact, it appears that quite the opposite was the case. There is also no way to know whether the prosecutor knew that appellant's answer was the result of any confusion on his part.

Furthermore, appellant's counsel had the opportunity to clear up any alleged confusion on redirect, but did not avail himself of this opportunity. Accordingly, we find no misconduct on the part of the prosecutor regarding cross-examination of appellant, and this branch of appellant's argument must fail.

■ In his second argument under this assignment of error, appellant contends the prosecutor acted improperly in inquiring into matters outside the scope of the indictment.

The indictment charged sexual battery in the spring of 1990 and in November 1990. Appellant called Bretta Howard in his case-in-chief. On direct examination, counsel for appellant asked Howard why she would assent to appellant's requests for sex. On cross-examination, the prosecutor asked Howard to elaborate on her earlier answer to the above question. Howard

stated that if she agreed to have sex with appellant, she would be allowed to "go certain places."

After obtaining this answer, the prosecutor proceeded to question Howard about prior incidents of sexual conduct between herself and appellant. Howard testified it first happened when she was thirteen and it continued at the frequency of two to three times per week. The prosecutor then referred in her closing argument to Howard's testimony that she and appellant had been engaging in sexual conduct since she was thirteen years old.

Appellant, in his brief, merely alleges that evidence of such conduct was beyond the scope of the indictment. We construe this argument to state, however inartfully, that the prosecutor committed misconduct by inquiring into prior acts of misconduct in violation of Evid.R. 404(B).

Courts across the nation have sharply split on this issue. See Annotation, Admissibility, in Prosecution for Sexual Offense, of Evidence of Other Similar Offenses (1961), 77 A.L.R.2d 841. However, several Ohio courts have found that evidence of other acts, not too remote in time, would be admissible as tending to show motive. See *State v. Pennington* (July 30, 1991), Franklin App. No. 91AP–13, unreported, 1991 WL 476699; *State v. Strobel* (1988), 51 Ohio App.3d 31, 554 N.E.2d 916; *State v. Chapman* (1959), 111 Ohio App. 441, 83 Ohio Law Abs. 135, 15 O.O.2d 19, 168 N.E.2d 14.

We note that it was not argued at trial that this evidence was admissible pursuant to Evid.R. 404(B). Rather, the prosecutor sought to have this evidence admitted to show Howard's state of mind. The prosecutor argued that appellant had opened this line of inquiry by asking why Howard submitted to appellant's sexual advances, and that the state should be allowed to show that Howard submitted because there was an extended course of sexual conduct.

Even assuming the evidence of other acts was inadmissible pursuant to Evid.R. 404(B), we hold that there was no prosecutorial misconduct. In the state's case-in-chief, Howard testified that appellant had engaged in sexual intercourse with her in the spring of 1990 and in November 1990. Robert Kinker, an investigator for the Scioto County prosecutor's office also testified during the state's case. Kinker testified that appellant came down to the prosecutor's office of his own accord and admitted to having sexual relations with Bretta Howard, but maintained that Howard had "come on to him." Judy Benson, mother of Bretta Howard and wife of appellant Charles Benson, testified on behalf of appellant. Judy Benson testified her daughter told her about the incidents and admitted that she was the initiator. She testified that she spoke with her husband, appellant, who corroborated what Bretta had told

her. Appellant admitted on the stand that he had had sex with Bretta. The defense theory was that Bretta had initiated the sexual conduct.

From the foregoing, it is clear beyond a reasonable doubt that absent the "other acts" evidence which the prosecutor elicited on cross and to which she briefly referred in her closing argument, the jury would have found appellant guilty, and error in such respect was harmless. Accordingly, appellant's fourth assignment of error is overruled.

Finally, in his fifth assignment of error, appellant contends the trial court erred in overruling his motion to suppress the admission to the prosecutor's investigator. Appellant concedes the fact that he was not in custody at the time he made the admission and that therefore appellant's admission was not rendered inadmissible pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. However, appellant argues that had he known his statements would be admissible at a trial against him, he would never have made them. Appellant asks this court to "fashion a rule requiring that law enforcement officers make some statement to a potential offender relative to his waiver of the right against self incrimination, prior to taking a statement from that person, when the person is not in custody."

We must decline appellant's invitation to extend *Miranda* to noncustodial situations. In matters of federal constitutional law, we are bound by the decisions of the United States Supreme Court. If and when such a rule is to be fashioned, it must be done by the Supreme Court.

In accordance with the foregoing, appellant's fifth assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

HARSHA and GREY, JJ., concur.