**JOHNSON & HARDIN COMPANY, Appellee,**

v.

**DME LIMITED, a.k.a. Raffoler, Ltd., et al., Appellants.**

[Cite as *Johnson & Hardin Co. v. DME Ltd.* (1995), 106 Ohio App.3d 377.]

Court of Appeals of Ohio,
Twelfth District, Warren County.

No. CA95–02–017.

Decided Sept. 18, 1995.

378

*White, Getgey & Meyer Co., L.P.A.,* and *David I. Thompson,* for appellee.

*Frederick J. McGavran,* for appellant DME Limited.

---

POWELL, Judge.

Defendant-appellant, DME Limited, a.k.a. Raffoler, Ltd. ("Raffoler"), is a New York corporation with its principal place of business in Westbury, New York. Raffoler is engaged in the business of selling merchandise through the use of mail-order catalogs. Raffoler is not licensed to do business within the state of Ohio pursuant to R.C. 1703.05.

In 1994, Raffoler entered into a contract with Tricar Graphics Corporation ("Tricar") for the production of mail-order catalogs. Tricar in turn entered into a contract with plaintiff-appellee, Johnson & Hardin Company ("J & H") of Lebanon, Ohio, for the printing work necessary to produce the catalogs. A dispute subsequently arose between the parties concerning the timeliness of J & H's performance. J & H submitted invoices to Tricar which Tricar refused to pay.

On December 20, 1994, J & H brought suit against both Tricar and Raffoler[1] in the Warren County Court of Common Pleas. The complaint filed by J & H alleged that Tricar had failed to pay overdue invoices totalling $195,094 and that Raffoler was liable on the J & H–Tricar contract because an agency relationship existed between Raffoler and Tricar. J & H also filed an *ex parte* motion to attach approximately $167,214 which Raffoler and its affiliate, Healthhouse, USA, Inc., had deposited in two accounts with the United States Postmaster in Lebanon, Ohio to cover the cost of mailing the catalogs. The trial court granted the motion and ordered the postmaster to deposit the funds with the Warren County Clerk of Courts pending final disposition of the case.

On January 11, 1995, the trial court held a postattachment hearing pursuant to R.C. 2715.043 and 2715.045(D). Raffoler moved the trial court to vacate the order of attachment and release the funds. The trial court conducted the hearing in chambers and no record of the proceedings was kept. Both Raffoler and J & H were represented by counsel and were prepared to present testimony from witnesses concerning whether Raffoler was liable on the J & H–Tricar contract because of an agency relationship between it and Tricar. The trial court heard counsel's oral arguments concerning the attachment, but refused to take testimony from the witnesses. The trial court overruled Raffoler's motion to vacate the order of attachment in an entry dated January 27, 1995. Raffoler now appeals[2] setting forth the following assignments of error:

"Assignment of Error No. 1:

"The Trial Court erred to the prejudice of Appellant by denying Appellant a hearing to consider evidence regarding the validity of the prejudgment attachment order.

"Assignment of Error No. 2:

"The Trial Court erred to the prejudice of Appellant by refusing to vacate a prejudgment attachment order issued without requiring that Appellee post bond.

"Assignment of Error No. 3:

---

1. The complaint filed by J & H named Tricar and "DME, Limited" ("DME") as defendants. The record indicates that DME was merged into Raffoler in 1985. Therefore, we find that Raffoler is the real party in interest for purposes of this appeal.

2. Raffoler's appeal is properly before this court pursuant to R.C. 2715.46, which provides as follows:

"A party to a suit affected by an order discharging or refusing to discharge an order of attachment may appeal on questions of law to reverse, vacate, or modify it as in other cases; and the original action shall proceed to trial and judgment as though no appeal had been taken."

"The Trial Court erred to the prejudice of Appellant by refusing to vacate the order of attachment, where that order was not based on an adequate showing of irreparable injury."

In its first assignment of error, Raffoler contends that the trial court erred in refusing to hold a proper postattachment hearing. R.C. 2715.045(D) obligates a trial court to hold a hearing after it has granted an *ex parte* motion for attachment and provides as follows:

"The defendant may receive a hearing in accordance with section 2715.043 of the Revised Code by delivering a written request for hearing to the court within five business days after receipt of the notice provided pursuant to division (C) of this section. The request may set forth the defendant's reasons for disputing the plaintiff's claim for possession of property. However, neither the defendant's inclusion of nor his failure to include such reasons upon the request constitutes a waiver of any defense of the defendant or affects the defendant's right to produce evidence at any hearing or at the trial of the action. If the request is made by the defendant, the court shall schedule a hearing within three business days after the request is made, send notice to the parties of the date, time, and place of the hearing, and hold the hearing accordingly."

R.C. 2715.043(B) further defines the scope of the hearing required by R.C. 2715.045(D) and provides in part that:

"If a hearing is requested in accordance with section 2715.04 of the Revised Code or if a continuance is granted in accordance with division (B) of section 2715.042 of the Revised Code, the hearing shall be limited to a consideration of whether there is probable cause to support the motion and whether any of the property of the defendant is exempt from attachment."

■ Raffoler argues that R.C. 2715.043(B) and 2715.045(D) require the trial court to hold a trial-type evidentiary hearing at which the parties are afforded an opportunity to present testimony from witnesses. We disagree. Our review of the record indicates that the trial court held a postattachment hearing in chambers on January 11, 1995. At the hearing, Raffoler and J & H were each represented by counsel. The trial court afforded both Raffoler and J & H ample opportunity to present documentary evidence by way of affidavit on the issue of whether there was "probable cause" to support the attachment. The trial court also permitted the parties to present all of the relevant legal arguments both orally and in writing.[3] These procedures were sufficient for the trial court to

---

3. The record indicates that the trial court journalized two judgment entries on January 27, 1995. One of the entries provided that "[t]he Court did not review or consider [Raffoler's] Memorandum or the Affirmance and Affidavits filed." However, the second entry signed by the trial judge specifically provided that:

comply with R.C. 2715.043(B) and 2715.045(D). Accordingly, we find no abuse of discretion by the trial court in refusing to hold a trial-type evidentiary hearing. Raffoler's first assignment of error is overruled.

In its second assignment of error, Raffoler contends that the statutory scheme authorizing the *ex parte* attachment of assets is unconstitutional and that the trial court should therefore have vacated the order of attachment. The *ex parte* attachment of assets is governed by R.C. Chapter 2715. R.C. 2715.01 authorizes the attachment of assets owned by the defendant in a civil action and provides in part as follows:

"(A) An attachment against the property, other than personal earnings, of a defendant may be had in a civil action for the recovery of money, at or after its commencement, upon any one of the following grounds:

"(1) Excepting foreign corporations which by compliance with the law therefore [therefor] are exempted from attachment as such, that the defendant or one of several defendants is a foreign corporation[.]"

A plaintiff may attach assets which belong to the defendant by filing an *ex parte* motion along with his initial complaint. The motion must be accompanied by an affidavit which states all of the following:

"(A) The nature and amount of the plaintiff's claim, and if the claim is based upon a written instrument, a copy of that instrument;

"(B) The facts that support at least one of the grounds for an attachment contained in section 2715.01 of the Revised Code;

"(C) A description of the property sought and its approximate value, if known;

"(D) To the best of plaintiff's knowledge, the location of the property;

"(E) To the best of the plaintiff's knowledge, after reasonable investigation, the use to which the defendant has put the property and that the property is not exempt from attachment or execution[;]

"(F) If the property sought is in the possession of a third person, the name of the person possessing the property." R.C. 2715.03.

---

"This matter came on for hearing on the Motion of the Defendant, [Raffoler], Ltd., to vacate the order of attachment entered on December 20, 1994, by the Court * * * directing the Postmaster of the Lebanon, Ohio Post Office to deposit funds held by him for the accounts of Healthhouse, Inc. and * * * [Raffoler], Ltd., with the Clerk of Courts of Warren County. Upon consideration of the Motion and the arguments of counsel, the Court hereby determines that the Motion is not well taken and the Court therefore DENIES the Motion."

For purposes of this appeal, we believe that this latter entry constitutes conclusive evidence that the trial court considered the evidence and the oral and written arguments of counsel for both parties before rendering a decision denying Raffoler's motion to vacate the attachment.

R.C. 2715.045(A) addresses the authority of a trial court to order the *ex parte* attachment of assets and provides in part as follows:

"Upon the filing of a motion for attachment, a court may issue an order of attachment without issuing notice to the defendant against whom the motion was filed and without conducting a hearing if the court finds that there is probable cause to support the motion and that the plaintiff that filed the motion for attachment will suffer irreparable injury if the order is delayed until the defendant against whom the motion has been filed has been given the opportunity for a hearing. The court's findings shall be based upon the motion and affidavit filed pursuant to section 2715.03 of the Revised Code and any other relevant evidence that it may wish to consider."

Once the trial court has granted an *ex parte* motion for attachment, the plaintiff must then give the defendant notice of the attachment by filing a praecipe instructing the county clerk of courts to serve the defendant with a copy of the form prescribed by R.C. 2715.045(C). The defendant may obtain a postattachment hearing by filing a written request for a hearing within five business days of his receipt of the form prescribed by R.C. 2715.045(C). See R.C. 2715.045(D). The trial court must then schedule the hearing within three business days. See R.C. 2715.045(D). The trial court must also immediately vacate the *ex parte* order of attachment if after the hearing it finds that there is no "probable cause" to support the motion. R.C. 2715.045(E).

Another procedural safeguard provided for by this statutory scheme is the posting of a bond. R.C. 2715.044 codifies this requirement and provides in part that:

"An order of attachment issued by a court shall not be effective until the plaintiff that filed the motion for attachment files with the court a bond to the defendant against whom the motion was filed, executed by the plaintiff's surety, in an amount twice the approximate value of the property to be attached under the order, to the effect that, should judgment be issued against the plaintiff, the plaintiff will return the property taken or pay the value so assessed, at the election of the defendant, and also pay the damages suffered by the defendant as a result of the taking and detention of, and any injury to, the property and the costs of the action. If the plaintiff does not know the approximate value of the property sought to be attached under the order, or if the identity of the property to be attached is not known, the bond shall be in an amount twice that of the plaintiff's claim, as indicated in the plaintiff's affidavit filed pursuant to section 2715.03 of the Revised Code.

"In lieu of the bond, the plaintiff may deposit with the clerk of the court cash in an amount equal to twice the approximate value of the property or, if that value is

not known or the identity of the property to be attached is not known, equal to twice the amount of the claim of the plaintiff.

"When the ground of attachment is that the defendant is a foreign corporation, or not a resident of this state, the order of attachment may be issued without a bond."

R.C. 2715.26 also permits the defendant to immediately dissolve the attachment by posting a bond in an amount equal to twice the value of the property attached by the plaintiff.

 Raffoler argues that this statutory scheme violates its right to due process of law. The Due Process Clauses of the Ohio and United States Constitutions require that an individual or a corporation be given adequate notice and an opportunity to be heard where a statute infringes a protected property interest. *Brock v. Roadway Express, Inc.* (1987), 481 U.S. 252, 261, 107 S.Ct. 1740, 1747, 95 L.Ed.2d 239, 249; *Boddie v. Connecticut* (1971), 401 U.S. 371, 378, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119; *Williams v. Dollison* (1980), 62 Ohio St.2d 297, 299, 16 O.O.3d 350, 351, 405 N.E.2d 714, 715. The concept of due process is a flexible one which varies depending upon the importance attached to the interest and the particular circumstances under which the deprivation may occur. *Walters v. Natl. Assn. of Radiation Survivors* (1985), 473 U.S. 305, 320, 105 S.Ct. 3180, 3189, 87 L.Ed.2d 220, 232.

In *Peebles v. Clement* (1980), 63 Ohio St.2d 314, 17 O.O.3d 203, 408 N.E.2d 689, the Ohio Supreme Court considered the constitutionality of a previous version of Ohio's prejudgment attachment statute. The plaintiffs in *Peebles* brought suit alleging that the defendant had failed to account for funds she had received while acting as their agent. *Id.* at 315, 17 O.O.3d at 203, 408 N.E.2d at 690. The plaintiffs attached a number of the defendant's assets through the use of the *ex parte* attachment procedures contained in an earlier version of R.C. Chapter 2715. The defendant moved to dismiss the order of attachment arguing that the *ex parte* attachment procedures authorized by R.C. Chapter 2715 did not comply with due process. The court of common pleas granted the motion to dismiss because it found that R.C. Chapter 2715 violated due process.

On appeal, the Ohio Supreme Court affirmed the trial court's decision. The court held that the version of R.C. Chapter 2715 in effect at that time did not comply with due process because it did not require judicial supervision of the attachment procedure. *Id.* at paragraph two of the syllabus. The court also held that:

"Statutes providing for prejudgment attachment must at a minimum: (1) require plaintiff to furnish an appropriate bond or other security to compensate a defendant in the event of wrongful seizure; (2) require that an affidavit be filed

alleging personal knowledge of specific facts forming a basis for prejudgment seizure; (3) require that a judicial officer pass upon the sufficiency of the facts alleged in the affidavit; (4) provide for dissolution of the seizure upon the posting of a bond by defendant; and (5) provide an immediate right of hearing to the defendant in which plaintiff must prove that the seizure is warranted." *Id.* at paragraph one of the syllabus.

After *Peebles,* R.C. Chapter 2715 was amended to comply with the requirements of due process. Raffoler nevertheless argues that the attachment is unconstitutional in this case because R.C. 2715.044 does not require the plaintiff to post a bond where the defendant is a foreign corporation. At the outset, we note that no Ohio appellate court has yet ruled on the issue of whether R.C. 2715.044 violates due process by exempting the plaintiff from the bond requirement where the defendant is a foreign corporation. Therefore, we must resolve this question by applying general due process principles. See *Connecticut v. Doehr* (1991), 501 U.S. 1, 111 S.Ct. 2105, 115 L.Ed.2d 1.

In *Mathews v. Eldridge* (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18, the United States Supreme Court established a three-pronged balancing test which an appellate court must apply in order to determine whether a statute violates procedural due process. The test requires consideration of the following factors:

"First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.

The first prong of the *Mathews* test requires us to consider the weight of the private interest affected by the *ex parte* attachment in this case. Our review of the record indicates that J & H attached funds totalling approximately $167,214 which Raffoler and its affiliate, Healthhouse, USA, Inc., had deposited with the United States Postmaster in Lebanon, Ohio. Therefore, we find that there is a substantial private interest at stake in this case which is entitled to due process protection. See *N. Georgia Finishing, Inc. v. Di–Chem, Inc.* (1975), 419 U.S. 601, 606, 95 S.Ct. 719, 722, 42 L.Ed.2d 751, 756.

The second prong of the *Mathews* test requires us to consider the risk that Raffoler will be erroneously deprived of its assets. Raffoler argues that there is an unacceptably high risk of a wrongful deprivation in this case because R.C.

2715.044 does not require the plaintiff to post a bond where the defendant is a foreign corporation. Again, we must disagree.

In *Shaumyan v. O'Neill* (C.A.2, 1993), 987 F.2d 122, the United States Court of Appeals for the Second Circuit considered whether a prejudgment attachment statute must require the plaintiff to post a bond in order to comply with due process. The court held that due process does not necessarily require that the plaintiff post a bond to compensate the defendant for any potentially wrongful seizure. *Id.* at 128. The court reasoned that other procedural safeguards similar to those provided for by R.C. Chapter 2715 may be sufficient to alleviate any risk of wrongful seizure posed by a statute authorizing prejudgment attachment. *Id.*

As we have already noted, R.C. Chapter 2715 provides the following procedural safeguards: (1) the plaintiff must file an affidavit which alleges that the affiant has personal knowledge of the facts forming the basis of the attachment; (2) the trial court must review the affidavit and determine whether there is probable cause to support the attachment before an order of attachment may be issued; (3) the trial court must hold a prompt postattachment hearing; and (4) the defendant may immediately dissolve the attachment by posting a bond in an amount equal to twice the value of the property attached. Applying the rationale of *Shaumyan* to this statutory scheme, we find that these procedural safeguards are sufficient to alleviate any risk of wrongful seizure such that due process does not require the plaintiff to post a bond as security for the attachment. See, also, *Digital Equip. Corp. v. Currie Ent.* (D.Mass.1992), 142 F.R.D. 16, 26–27; *Darrah–Wantz v. Brown* (D.Conn.1991), 138 F.R.D. 20, 23. Moreover, we find this conclusion to be especially true in light of the significant state interest at issue in this case to which we now turn our attention.

The third prong of the *Mathews* test requires us to consider the state interest served by the *ex parte* attachment provisions of R.C. Chapter 2715. The state interest served by statutes authorizing *ex parte* attachments is the need to preserve the assets of the defendant during the pendency of litigation and thereby ensure that judgments rendered by courts will remain collectible. See *Fuentes v. Shevin* (1972), 407 U.S. 67, 93, 92 S.Ct. 1983, 2000–2001, 32 L.Ed.2d 556, 577. This interest is substantial in the present case because a foreign corporation like Raffoler which is not licensed to do business in Ohio will often have a powerful incentive to remove its assets from the territorial jurisdiction of Ohio courts once it is named as a defendant in a lawsuit. A plaintiff would then have no means of collecting a judgment rendered against a foreign corporation other than filing a second lawsuit in another jurisdiction. Consequently, we conclude that there is a significant public interest at issue in this case which justifies the state in authorizing the attachment of assets without requiring prior notice and an opportunity to be heard and the posting of a bond by the plaintiff.

In sum, we find that the attachment order issued by the trial court in this case does not violate the Due Process Clauses of the Ohio and United States Constitutions. To be sure, R.C. 2715.044 imposes a significant burden on foreign corporations by permitting a plaintiff to attach assets owned by these entities without first posting a bond. However, we are satisfied that the state's interest in permitting such seizures is significant and that the procedural safeguards already provided for by R.C. Chapter 2715 are sufficient to alleviate the risk of a wrongful seizure. Accordingly, we hold that the trial court did not err in denying Raffoler's motion to vacate the order of attachment.

██ Raffoler also argues that R.C. 2715.044 is unconstitutional because it violates the Commerce Clause of the United States Constitution. Section 8, Article I of the United States Constitution provides that "Congress shall have [the] Power * * * To regulate Commerce * * * among the several States * * *." The Commerce Clause not only grants Congress the authority to regulate commerce among the states, but also directly prohibits state governments from discriminating against interstate commerce. *New Energy Co. of Indiana v. Limbach* (1988), 486 U.S. 269, 273, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302, 308. The purpose of this "dormant" aspect of the Commerce Clause is to prohibit the states from engaging in economic protectionism by enacting legislation designed to benefit in-state economic interests by burdening out-of-state competitors. *Philadelphia v. New Jersey* (1978), 437 U.S. 617, 623, 98 S.Ct. 2531, 2535, 57 L.Ed.2d 475, 481.

██ In *Ravens Metal Products, Inc. v. Harrett Corp.* (May 19, 1992), Tuscarawas App. No. 91AP100080, unreported, 1992 WL 127151, the Ohio Fifth District Court of Appeals considered a Commerce Clause challenge to the constitutionality of R.C. 2715.044. The court held that R.C. 2715.044 does not violate the Commerce Clause because it does not burden interstate commerce. *Id.* at 3. The court reasoned that "[the] preservation of assets of a foreign corporation for the satisfaction of a judgment where such satisfaction would otherwise be difficult or impossible to obtain is a lawful and legitimate state purpose which, though it may well affect interstate commerce, falls short of unconstitutionally regulating or burdening interstate commerce." *Id.*

We find this rationale persuasive. As in *Ravens*, there is simply no evidence in this case that R.C. 2715.044 places a measurable burden on interstate commerce or that the statute in any way creates an atmosphere of state-sponsored economic protectionism. Therefore, we find that Raffoler's Commerce Clause challenge to the constitutionality of R.C. 2715.044 is without merit. Raffoler's second assignment of error is overruled.

In its third assignment of error, Raffoler again argues that the trial court erred in denying its motion to vacate the order of attachment. Raffoler contends that the affidavit presented by J & H in support of its motion for attachment was insufficient and that the trial court consequently erred in finding that J & H would suffer "irreparable injury" if the motion for attachment was denied.

■ An affidavit in support of an *ex parte* motion for attachment must recite specific facts upon which the affiant bases his belief that the plaintiff would suffer "irreparable injury" if the motion is denied. *Kalmbach Feeds, Inc. v. Lust* (1987), 36 Ohio App.3d 186, 191, 521 N.E.2d 1126, 1131. R.C. 2715.045(B) specifies the circumstances under which a trial court may make a finding of "irreparable injury" and provides as follows:

"A finding by the court that the plaintiff will suffer irreparable injury may be made only if the court finds the existence of either of the following circumstances:

"(1) There is present danger that the property will be immediately disposed of, concealed, or placed beyond the jurisdiction of the court.

"(2) The value of the property will be impaired substantially if the issuance of an order of attachment is delayed."

■ The record indicates that J & H appended the affidavit of its sales representative, Ronald Meyers, to the motion for attachment. Paragraph six of the Meyers affidavit provides as follows:

"To the best of my knowledge and belief, if this Order of Attachment is delayed until Defendant has been given notice and opportunity for hearing, then irreparable injury will result to J & H. Specifically, [Raffoler], will remove the assets beyond the jurisdiction of this Court, which constitutes 'irreparable injury' as set forth in Revised Code § 2715.011 [*sic*] and 2715.045(B)."

After a careful review of this evidence, we are satisfied that the trial court properly found that J & H would suffer "irreparable injury" if its *ex parte* motion for attachment was denied. Accordingly, we find no error by the trial court in denying Raffoler's motion to vacate the order of attachment. Raffoler's third assignment of error is overruled. The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

WALSH, P.J., and KOEHLER, J., concur.