Healea, J. (orally).
This proceeding comes into this court upon appeal from the probate court of this county. The appellant, Carlo Crescio, was by the probate court of -this county appointed administrator of the estate of Vincenzo Arduino, and upon motion of Nicola Cerri, a vice consul of the Kingdom of Italy in this jurisdiction, said probate court, on the 19th day of December, 1908, removed said Carlo Crescio as such administrator, and it is from that order sustaining such motion and removing such adminis *370 trator that this appeal has been taken. The case has been submitted to the court upon the transcript, original papers from the court below and the evidence.
There is but little, if any, dispute as to the facts. It is conceded that Yincenzo Arduino died on or about October 30th, 1908, leaving no widow and no next of kin in this country. The application for appointment of the administrator, made by the appellant, Carlo Creseio, in probate court, recites that he left a father and mother, whose post office address is Asti, Italy, and the affidavit of Mr. Creseio is attached to the application, which states that there is no will of Yincenzo Arduino to his knowledge.
It is conceded that Nicola Cerri is the duly accredited vice consul of the Kingdom of Italy, stationed at Cleveland, Ohio, and that this county is included in the territory in which he has authority to'exercise his office.
' The proof shows that Yincenzo Arduino was, at the time of his death, an alien belonging to the Kingdom of Italy, and has no next of kin in the United States, but has next of kin in Italy. There is no proof tending to show notice to the vice consul of the death of Arduino, nor notice of the application for the appointment of Creseio as administrator of his estate. There is not among the papers from the probate court any inventory and appraisement of any estate, and the application for appointment recites that ‘ ‘ the decedent left no estate except a claim for wrongfully causing the death of said decedent against the East Goshen Coal Company.”
This removal of Creseio- and the appointment of Cerri is sought upon the ground that the vice consul, Cerri, is of right entitled to preference in the appointment under the treaties between the United States and the Kingdom of Italy.
Section 2 of Article YI of the United States Constitution is as follows:
“And all treaties made or which shall be made under the authority of the United States shall be the.supreme law of the land; and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding. ’ ’
*371 This provision would not seem to require much construction. Its language is explicit and easily understood. But we are not without precedent touching its application. In our own state, in the case of State v. Vanderpool, 39 O. S., 276-7, the court say:
“By Section 2, Article VI, of the Constitution of the United States, ‘this Constitution and the laws of the United States, made in pursuance thereof, and all treaties made, or which shall be made under the authority of the United States, shall be the supreme lato of the land, and the jtidges of every state shall be bound thereby, anything in the constitution and laws of any state to the contrary notwithstanding. ’
“This treaty is therefore the law of the land, and the judges of every state are as much bound thereby as they are by the constitution and laws of the federal or state governments. It is therefore the imperative duty of the judicial tribunals of Ohio to take cognizance of the rights of persons arising under a treaty to the same extent as if they arose under a statute of the state itself.”
There are many other eases decided by the United States Supreme Court applying this provision of the Constitution in this same way, and perhaps to a greater extent than the Supreme Court of our own state.
Those parts of the treaty between the United States and Italy relied upon as giving the mover here, that is the vice consul, Cerri, preference in the appointment, are the following:
Article IX. “Consuls general, consuls, vice consuls and consular agents may have recourse to the authorities of the respective countries within their district, whether federal or local, judicial or executive, for the purpose of complaining of any infraction of the treaties or conventions existing between the United States and Italy, as also in order to defend the rights and interests of their countrymen. If the complaint should not be satisfactorily redressed, the consular officers aforesaid, in the absence of a diplomatic agent of their country, may apply directly to the government of the country where they reside.”
Article XVI. ‘ ‘ In case of the death of a citizen of the United States in Italy, or of any Italian citizen in the United States, who has no known heir, or testamentary executor designated .by him, the competent local authorities shall give notice of the fact to the consuls or consular agents of the nation to which the de *372 ceased belongs, to the end that information may be at once transmitted to the parties interested.”
Article XVII. “The respective consul general, consuls, vice consuls and consular agents, as likewise the consular chancellors, secretaries, clerks or attaches, shall enjoy in both countries, all the rights, prerogatives, immunities and privileges which are or may hereafter be granted to the officers of the same grade, of the most favored nation.”
And upon that clause is based the claim that the vice consul in this case is entitled to preference in the appointment as administrator.
In the treaty between the United States and the Argentine Republic is the following:
Article IX. “If any citizen of either of the two contracting parties shall die without will or testament, in any of the territories of the other, the consul general, or consul of the nation to which the deceased belonged, or the representative of such consul general or consul, in his absence, shall have the right to intervene in the possession, administration and judicial liquidation of the estate of the deceased, conformably with the laws of the country, for the benefit of the creditors and legal heirs. ’ ’
So that the treaty between the Argentine Republic and the United States does provide for administration on the part of the consular agent in this country, where a person died leaving an estáte in this country, who was an alien and who had no next of kin in this country.
The appellant in this case objected to the introduction of printed copies of these portions of these treaties. Those objections were overruled and exceptions were noted. This evidence was superfluous. The authorities upon the question of the right of this court to consider these treaties seems to be uniform and to have the effect that “courts judicially notice the provisions of treaties made by their own governments.” And that: “Judicial notice of the law includes notice of its true reading, and of all matter which can legally affect its validity or meaning.” Encyclopedia of Evidence, Vol. 7, page 960.
So that it is the duty of this court to notice these treaties judicially.
*373 Now how should the terms of these treaties be construed? Counsel cite 26 Am. & Eng. Eney., 555, to the effect that the terms of a treaty should be construed in the same way that a contract or other statute would be construed. In the second edition of this same work, Vol. 28, page 488, it is said:
“In construing the language of treaties the courts will adopt the same general rules which are applicable in the construction of statutes, contracts and written instruments generally in order to carry out the purpose and intention of the makers. ’ ’
In the same volume, at page 490, in speaking of the construction of treaties, the text says:
“As treaties are solemn engagements entered into between independent nations for the common advancement of their interests and the interests of civilization, and as their main object is not only to avoid war and secure lasting peace but to promote’ a friendly feeling between the people of the two countries, they should be interpreted in the broad and liberal spirit which is calculated to make for the existence of a perpetual amity so far as can be done without the sacrifice of individual rights or the principles of personal liberty which lie at the foundation of jurisprudence.”
I am of the opinion that the portion of the United States Constitution and the parts of the treaties mentioned do not require construction beyond the plain meaning -of the language therein employed. This provision of the Constitution and these treaties are only susceptible of one meaning, and interpret themselves. Giving to these provisions of the Constitution the meaning which their language imports, the treaty provisions are supreme, and this court is bound to obey them in determining this appointment regardless of Section 6005 of the Revised Statutes of Ohio, or any other statute of this state.
The Massachusetts Supreme Court, in the case cited by counsel on both sides of this case (191 Mass., 276), has held that the treaties existing'between nations are the supreme law of the land, and that the .application of the consular representative to be appointed administrator of the estate of a Russian subject who died here must be granted against the public administrator. This is a well considered ease, is founded upon the better reason *374 and in my judgment has greater weight as an authority than the opinion of the Supreme Court of Louisiana to the contrary, The eases reported in the 12 and 33 Miscelloneous Reports, New York, all cited in the Massachusetts opinion, are in line with the holding in Massachusetts and are also well considered cases.
Counsel for Creseio does not exhibit much earnestness for the dl a.iin that the Massachusetts case does not correctly state the law, but contends that these provisions of the treaties relied upon are only applicable .to cases where the deceased alien left an estate; that no court has gone further than to hold them applicable where there is an estate left by the deceased alien; that Arduino left no estate; that his death was wrongfully caused by the East Goshen Coal Company, and that by Sections 6134 and 6135 of the Revised Statutes of Ohio his administrator has a claim to recover damages against such company for the benefit only of his next of kin, and that such claim is not part of his estate. The eases of Steel v. Kurtz, 28 O. S., 191-6, Wolf v. Railway, 55 O. S., 517, and 1 C. C.—N. S., 17, are relied upon as sustaining this claim. In the 28th O. S. case the second paragraph of the syllabus is as follows:
“While the proceeds1 of a judgment rendered in an action under this statute are directed to be distributed to the beneficiaries of the judgment in the proportions provided by law in relation to the distribution of personal estates left by persons dying intestate, the money realized is not to be treated as part of the general estate of the intestate. The personal representative in whose name the action is brought is a trustee of the fund and must distribute the proceeds of the judgment to those to whom the general personal estate would descend according to the course of the statute of descents and distribution.”
The court, in this case, clearly recognizes that the claim for wrongful death is part of decedent’s estate. The court say: “It is not to be treated as part of the general estate.” Why this use of the qualifying word general unless to distinguish all that part of the personal estate which does not arise from the claim for wrongful death from that which does so arise and which is a part of the special estate of the deceased.
The 55th O. S. case goes no further upon this question than the 28th O. S.°case, and the opinion of our own circuit court, *375 1 C. C.—N. S., 17, is to the same effect. Neither of these cases is an authority upon the point that a claim for wrongful death is no part of decedent’s estate in any sense. They do hold it is no part of the general personal estate; that the administrator has no personal interest in it; that creditors can have no claim upon it. But they do not hold that it is not a chose in action, or a right which is property to be recovered and distributed as the statutes require. I am of the opinion that it is a chose in action, a claim that may be recovered, and as such is property and is a part of the special estate of the decedent to be recovered in the name of the administrator for the benefit of the persons named in the statute and distributed as the statute provides.
Section 5994 of the Revised Statutes of Ohio provides for the appointment of administrators and authorizes the appointment whenever any estate is left, it matters not how small. The question is not made, but I presume Arduino left some goods and chattels if nothing more than a suit of clothes, but the power to appoint an administrator is not dependent upon his having left goods and chattels. If it were, and the face of Creseio’s application is true, then Creseio was appointed without any authority in law, and there is no power to maintain a suit for wrongful death where decedent left no goods, chattels or other property. The contention of Creseio’s counsel in this case that Arduino left no estate and that the claim for his wrongful death is no part of his estate would defeat Creseio’s appointment as administrator, and such claim for wrongful death, and ivould in all cases where decedent left no property defeat the purpose, and object of Sections 6134 and 6135 of the Revised Statutes of Ohio. The greater weight of authority is opposed to this view. I cite two cases, one in Minnesota and one in Nebraska.' The Minnesota case is reported in 46 Nortwestern, page 79. After citing the Minnesota statutes the court say:
“Without now considering whether letters of ■administration can be assailed collaterally upon any such ground, we are of opinion that a cause of action under the statute first cited is to be assets of the deceased, within the meaning of the statute last cited, so as to give the probate court jurisdiction to direct administration for the purpose of enforcing it, and distributing *376 the proceeds. It is true that, strictly speaking, the cause of the action did not belong to the deceased in his lifetime, but only accrued at his death; also that, when realized on, the proceeds form no part of his general estate, but belong to his next of kin. But the narrow and literal construction contended for by the appellant would often prevent the enforcement of the cause- of action at all, because of the impossibility of securing a personal representative of the deceased to maintain it. Administration is a proceeding in rem, the res being the estate of the deceased; and we apprehend that, whether the deceased was a resident or a non-resident, the existence of assets is essential to administration, for it is- the estate, and not the expired breath, of the deceased upon which administration operates. Hence it would seem to follow, from appellant’s logic, that if the deceased left no assets, strictly so-called, no administration could ever be had, and consequently the statutory right of action for the benefit of the next of kin could never be enforced. This right of action is given in a case of the death of any person, whether a resident of the state, or only temporarily sojourning in it, at the time of his receiving the injuries causing his death. The law will not allow it to be defeated for want of a party to maintain it. ”
The Nebraska case is reported in the 71 Northwestern, at pages 283-4. The second paragraph of the syllabus reads:
“The county court of a county wherein a non-resident of the state is killed may appoint an administrator to prosecute a statutory action for "the injury causing the death of the decedent, though the latter left no property in this state. ’ ’
The court, in the opinion, say:
“The authority of the county court did not rest alone upon the few articles of personal property already mentioned which the deceased had upon his person when he died, since the cause of action against the railroad corporation was sufficient estate to justify the appointment of an administrator, had there been no other estate to be administered. The decisions in the other states upon the questions are conflicting, but the decided weight of authority sustains the doctrine that the cause of action under Lord Campbell’s act -is an estate sufficient to grant administration thereon.”
The court so held in Railway Co. v. Lewis, 24 Neb., 848, and in discussing it farther it cites- several other authorities sustain *377 ing this view, viz: Merkle v. Bennington Tp., 68 Mich., 133 (35 N. W., 846); Railroad Co. v. Andrews, 36 Conn., 213; Morris v. Railroad Co., 65 Iowa, 727 (23 N. W., 143); Pinney v. McGregory, 102 Mass., 186; Griswold v. Griswold (Ala.), 20 South., 437, and other eases.
The only case I have been able to find holding the contrary doctrine is a case reported in the 29 Kansas, which holds that a claim for wrongful death is no part of the decedent’s estate; that no administrator can be appointed to recover it unless the deceased left other assets, and that, therefore, in all cases where the decedent left no other assets that no cause of action can be enforced for wrongful death.
Therefore under these authorities the court is of the opinion that the motion to remove Crescio should be sustained
I might add that in this case there is no claim that Mr. Crescio' is not a proper and fit person to administer this estate. He certainly is proper and fit, and the court sustains this motion upon no other ground than the one which the court has announced, that the weight of authority seems to be that the consular representative in this jurisdiction has the preference in this appointment.