[This decision has been published in *Ohio Official Reports* at 93 Ohio St.3d 160.]

THE STATE EX REL. GOLDBERG, APPELLEE, *v.* MAHONING COUNTY PROBATE COURT ET AL., APPELLANTS.

[Cite as *State ex rel. Goldberg v. Mahoning Cty. Probate Court*, 2001-Ohio-1297.]

*Probate court—Concealed or embezzled assets—R.C. 2109.50 to 2109.56 do not confer subject-matter jurisdiction on probate courts to issue prejudgment attachment orders relating to personal property—Prohibition—Writ sought to prohibit judge of common pleas court, probate division, from exercising further authority under his June 23, 2000 attachment order— Court of appeals' grant of writ affirmed, albeit for reasons additional to and different from those expressed by the court of appeals.*

(No. 00-2238—Submitted June 20, 2001—Decided September 5, 2001.)

APPEAL from the Court of Appeals for Mahoning County, No. 00CA129.

_____

*Per Curiam.*

{¶ 1} In April 1999, appellants, the Mahoning County Court of Common Pleas, Probate Division, and its judge, Timothy P. Maloney, began investigating complaints alleging that attorney Richard D. Goldberg[1] had concealed, embezzled, conveyed away, or had been in the possession of money, chattel, and choses in action of seventeen different estates. Judge Maloney initiated concealment proceedings pursuant to R.C. 2109.50 *et seq*.

{¶ 2} Judge Maloney found that attorney Goldberg had deposited in his own "trustee" checking account settlement checks intended for beneficiaries of

_____

1. We denied attorney Goldberg's affidavit of resignation in May 2000, and found him in contempt of court. See *In re Resignation of Goldberg* (2000), 88 Ohio St.3d 1504, 727 N.E.2d 926; *Disciplinary Counsel v. Goldberg* (2000), 89 Ohio St.3d 1449, 731 N.E.2d 1137.

numerous estates without the knowledge, consent, or approval of fiduciaries or the probate court and that he used these funds for personal purposes. According to Judge Maloney, these proceeds were from settlements of wrongful death claims. Judge Maloney further found that attorney Goldberg had failed in his duties to surrender client and estate files and financial records of certain guardianships and that he had liquidated some of his property holdings in 1999.

{¶ 3} On June 23, 2000, as a result of these findings, Judge Maloney issued an order directing the bailiff of the Girard Municipal Court to "search for, seize and attach any and all business and/or financial records and/or property in the possession or under the control of Richard D. Goldberg and/or any and all members of his family and/or any other person, firm corporation, partnership [or] other entity which may be acting for him or which or who may have acted for him, with him or otherwise, whether directly or indirectly, in any personal, business or other venture and whether the same may be considered personal, business or professional in nature." Judge Maloney directed the bailiff to search and attach property within attorney Goldberg's personal residence as well as a warehouse and "any other place in which the said Bailiff may learn that any of the above described types of records, property, or other interests may be kept, discovered or located." Judge Maloney specified in his entry that the prejudgment attachment of personal property was justified under R.C. 2715.01 *et seq.* as well as R.C. 2109.56.

{¶ 4} On Saturday, June 24, 2000, the bailiff and several law enforcement officers executed the prejudgment attachment order. When they executed the order at the Goldberg residence, a fourteen-year old daughter of attorney Goldberg and his wife, Dorothy Goldberg (appellee), answered the door and was told to contact an adult. Mrs. Goldberg and her attorney arrived shortly thereafter. Over protests by Mrs. Goldberg and her attorney, the police and their agents executed the order, videotaping, photographing, and listing the items contained in the house, and seizing and removing some of the items, including four Rolex watches, two Piaget

watches, three Oriental rugs, and one computer. The attachment team also videotaped and photographed the items in the warehouse and changed the locks to it. The attachment order was not requested by any representative of the estates and was not supported by an affidavit pursuant to R.C. 2715.03.

{¶ 5} On July 3, 2000, Mrs. Goldberg filed a complaint for a writ of prohibition in the Court of Appeals for Mahoning County to prevent appellants from exercising further authority under their June 23, 2000 attachment order. The court of appeals denied appellants' motion to dismiss and ordered the parties to submit briefs on the prohibition claim. In their brief, appellants claimed that they had concluded that their attachment order was an appropriate interim remedy under R.C. 2109.50 and 2715.01 *et seq.*

{¶ 6} In November 2000, the court of appeals entered a judgment granting the writ of prohibition and ordering the probate court and Judge Maloney to return to Mrs. Goldberg the property that is the subject of the attachment order. The court of appeals held that although appellants had subject-matter jurisdiction to issue a prejudgment attachment order, they patently and unambiguously lacked jurisdiction to do so in an unconstitutional manner.

{¶ 7} This cause is now before the court upon an appeal as of right.

{¶ 8} In order to be entitled to a writ of prohibition, Mrs. Goldberg must establish that (1) Judge Maloney and the probate court are about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denial of the writ will cause injury for which no other remedy in the ordinary course of law exists. *Page v. Riley* (1999), 85 Ohio St.3d 621, 623, 710 N.E.2d 690, 692.

{¶ 9} Appellants assert that prohibition may not be granted because they have already exercised their judicial power by entering the June 23, 2000 attachment order. But in rejecting comparable contentions, we have held that " 'where an inferior court patently and unambiguously lacks jurisdiction over the

cause, prohibition will lie both to prevent the future unauthorized exercise of jurisdiction *and to correct the results of previous jurisdictionally unauthorized actions*.' " (Emphasis *sic*.) *State ex rel. Rogers v. McGee Brown* (1997), 80 Ohio St.3d 408, 410, 686 N.E.2d 1126, 1127, quoting *State ex rel. Litty v. Leskovyansky* (1996), 77 Ohio St.3d 97, 98, 671 N.E.2d 236, 238; see, also, *State ex rel. LTV Steel Co. v. Gwin* (1992), 64 Ohio St.3d 245, 248, 594 N.E.2d 616, 619. In cases of a patent and unambiguous lack of jurisdiction, the availability of appeal is immaterial. *State ex rel. Corn v. Russo* (2001), 90 Ohio St.3d 551, 554, 740 N.E.2d 265, 268. Moreover, as the court of appeals concluded, appellants continue to hold the attached property, either actually or constructively, pursuant to their unlawful prejudgment attachment order.

{¶ 10} The dispositive issue is whether appellants patently and unambiguously lacked jurisdiction to issue the prejudgment attachment order in the context of concealment proceedings. For the reasons that follow, we hold that appellants patently and unambiguously lacked jurisdiction to issue the June 23, 2000 attachment order, and we affirm the judgment of the court of appeals.

{¶ 11} Probate courts are courts of limited jurisdiction, and probate proceedings are consequently restricted to actions permitted by statute and the Ohio Constitution. *Corron v. Corron* (1988), 40 Ohio St.3d 75, 531 N.E.2d 708, paragraph one of the syllabus; *State ex rel. Lipinski v. Cuyahoga Cty. Court of Common Pleas, Probate Div.* (1995), 74 Ohio St.3d 19, 22, 655 N.E.2d 1303, 1306. Appellants contend that they have subject-matter jurisdiction to issue the prejudgment attachment order in the context of concealment actions under R.C. 2109.50 to 2109.56 as well as their additional exclusive and plenary authority under R.C. 2101.24(A)(2) and (C).

{¶ 12} R.C. 2109.50 to 2109.56, however, do not confer subject-matter jurisdiction on probate courts to issue prejudgment attachment orders relating to personal property. A proceeding for the discovery of concealed or embezzled assets

of an estate, brought under R.C. 2109.50, is a special proceeding of a summary, inquisitorial character whose purpose is to facilitate the administration of estates by summarily retrieving assets that rightfully belong there. *In re Estate of Fife* (1956), 164 Ohio St. 449, 58 O.O. 293, 132 N.E.2d 185, paragraphs one and two of the syllabus; *Lauerman v. Destocki* (1993), 87 Ohio App.3d 657, 664, 622 N.E.2d 1122, 1127.

{¶ 13} In determining the scope of a concealment proceeding instituted under R.C. 2109.50, we must first look at its language, reading words and phrases used in context and construing them according to the rules of grammar and common usage. *State ex rel. Antonucci v. Youngstown City School Dist. Bd. of Edn.* (2000), 87 Ohio St.3d 564, 565, 722 N.E.2d 69, 71; R.C. 1.42.

{¶ 14} R.C. 2109.50 provides for a probate court proceeding against persons suspected of converting, embezzling, or conveying away estate assets:

"Upon complaint made to the probate court of the county having jurisdiction of the administration of a trust estate or of the county wherein a person resides against whom a complaint is made, by a person interested in such trust estate or by the creditor of a person interested in such trust estate against any person suspected of having *concealed, embezzled, or conveyed away or of being or having been in the possession of any moneys, chattels, or choses in action of such estate, said court shall by citation, attachment or warrant, or, if circumstances require it, by warrant or attachment in the first instance, compel the person or persons so suspected to forthwith appear before it to be examined, on oath, touching the matter of the complaint.* * * *

"The probate court may initiate proceedings on its own motion.

"The probate court shall forthwith proceed to hear and determine the matter." (Emphasis added.)

{¶ 15} R.C. 2109.50 limits concealment proceedings to cases in which a person is suspected of concealing, embezzling, conveying away, or being or having

been in possession of any money, chattel, or chose in action "*of such estate*." (Emphasis added.) Contrary to appellants' claims, the assets allegedly concealed and embezzled here, *i.e.*, proceeds from settlements of wrongful death claims, are *not* estate assets. As we held in *U.S. Fid. & Guar. Co. v. Decker* (1930), 122 Ohio St. 285, 287, 171 N.E. 333, 334:

"It will readily be conceded that * * * *a fund [arising out of a wrongful death claim] is not a part of the assets of the estate of the decedent.* It is not property which belonged to the decedent in his lifetime, and the claim did not come into existence until his death. In the nature of things, it could not be inventoried as a part of the estate. The fund is not subject to administration and distribution like property of which the decedent died seized." (Emphasis added.)

{¶ 16} Lower courts have reiterated that funds recovered by a personal representative in a wrongful death action are intended for the exclusive benefit of the statutory beneficiaries and are *not* an asset of the decedent's estate. *In re Estate of Craig* (1993), 89 Ohio App.3d 80, 84-85, 623 N.E.2d 620, 624; *Spivey v. Bender* (1991), 77 Ohio App.3d 17, 24, 601 N.E.2d 56, 60. At best, the proceeds of a wrongful death claim are "assets" of the decedent's estate for "procedural and accounting purposes only," the award being the actual property of the statutory beneficiaries, which cannot be used to satisfy the decedent's debts. *Fogt v. United Ohio Ins. Co.* (1991), 76 Ohio App.3d 24, 28, 600 N.E.2d 1109, 1111; cf. *DeGarza v. Chetister* (1978), 62 Ohio App.2d 149, 155-157, 16 O.O.3d 335, 339, 405 N.E.2d 331, 336-337, which, while referring to a wrongful death claim being part of the decedent's estate, noted that it held this status in a limited or qualified sense only, and that the decedent's representative was merely a nominal party to the claim, with the statutory beneficiaries being the real parties in interest.

{¶ 17} Although there is a duty on the estate representative to faithfully administer wrongful death proceeds and to account for them, these proceeds are not considered part of the estate of the decedent. See *U.S. Fid. & Guar.*, 122 Ohio St.

at 290-291, 171 N.E. at 335. Because the wrongful death settlement proceeds are not estate assets, the probate court and Judge Maloney lacked jurisdiction to proceed under R.C. 2109.50.

{¶ 18} Moreover, even if it could be successfully asserted that wrongful death proceeds are estate assets for purposes of R.C. 2109.50, a concealment proceeding brought under that provision would still not have authorized the prejudgment attachment of personal property ordered by appellants.

{¶ 19} As the court of appeals properly found, R.C. 2109.50 is confined to authorizing prejudgment attachment of *persons*, not property: "[The probate] court shall by citation, *attachment* or warrant, or, if circumstances require it, by warrant or *attachment* in the first instance, compel the *person or persons* so suspected to forthwith appear before it to be examined, on oath, touching the matter of the complaint." (Emphasis added.) See, also, Black's Law Dictionary (7 Ed.1999) 123, which includes as one of the definitions of "attachment" the "arrest of a person who either is in contempt of court or is to be held as security for the payment of a judgment."

{¶ 20} Furthermore, R.C. 2715.01(D) expressly provides that a prejudgment attachment of personal property must be brought under R.C. Chapter 2715: "An attachment against the property, other than personal earnings, of a defendant *may be accomplished prior to the entry of judgment only pursuant to an attachment proceeding under this chapter*." (Emphasis added.) Under R.C. 2715.01(A), an attachment against personal property, other than personal earnings, of a defendant may be had in a "*civil action* for the recovery of money." (Emphasis added.) A concealment action under R.C. 2109.50, however, is, as appellants concede, not a civil action. Instead, it is a *quasi-criminal* proceeding that is not intended to be a substitute for a *civil action* to recover a judgment for money owing to an administrator. *Fife*, 164 Ohio St. 449, 58 O.O. 293, 132 N.E.2d 185, at

paragraph one of the syllabus; *Rinehart v. Bank One, Columbus, N.A.* (1998), 125 Ohio App.3d 719, 732, 709 N.E.2d 559, 567.

{¶ 21} In addition, neither R.C. 2101.24(A)(2) nor (C) confers jurisdiction on Judge Maloney and the probate court to issue prejudgment attachment orders in concealment proceedings. Under R.C. 2101.24(A)(2), the probate court has exclusive jurisdiction over a particular subject matter if (a) another section of the Revised Code expressly confers jurisdiction over that subject matter upon the probate court and (b) no section of the Revised Code expressly confers jurisdiction over that subject matter upon any other court or agency. No statutory section expressly confers jurisdiction on probate courts to consider concealment actions concerning proceeds from wrongful death claims or provides for prejudgment attachment of personal property in that or any other context. And R.C. 2715.01(A) and (D) specifically divest probate courts of authority to issue prejudgment attachment orders in concealment actions, which are special, quasi-criminal proceedings. R.C. 2101.24(C), which details a probate court's plenary authority, is likewise inapplicable because a prejudgment attachment within a concealment proceeding is not "properly before the court."

{¶ 22} Finally, even assuming that appellants had jurisdiction to issue a prejudgment attachment order against a defendant's personal property in a concealment action, they patently and unambiguously acted in excess of that jurisdiction when they failed to comply with either the statutory or constitutional prerequisites for such an order. See *Corn*, 90 Ohio St.3d at 554, 740 N.E.2d at 268 ("a writ of prohibition prevents an inferior court from exceeding its jurisdiction").

{¶ 23} As we held in *Peebles v. Clement* (1980), 63 Ohio St.2d 314, 17 O.O.3d 203, 408 N.E.2d 689, paragraph one of the syllabus, in order to comport with constitutional due process, "[s]tatutes providing for prejudgment attachment must at a minimum: (1) require plaintiff to furnish an appropriate bond or other security to compensate a defendant in the event of wrongful seizure; (2) require that

an affidavit be filed alleging personal knowledge of specific facts forming a basis for prejudgment seizure; (3) require that a judicial officer pass upon the sufficiency of the facts alleged in the affidavit; (4) provide for dissolution of the seizure upon the posting of a bond by defendant; and (5) provide an immediate right of hearing to the defendant in which plaintiff must prove that the seizure is warranted." See, also, R.C. 2715.01 *et seq.*

{¶ 24} The court of appeals correctly found that appellants here did not comply with these constitutional requirements, including those relating to an affidavit and a bond:

"The action taken by the Probate Judge in this case was unconstitutional. By his unilateral action, he completely eliminated the requirement that an affidavit be filed alleging personal knowledge of specific facts forming a basis for prejudgment procedure, as well as the requirement that an independent judicial officer pass upon the sufficiency of those facts. He also eliminated the requirement of an appropriate bond or other security to compensate a defendant in the event of wrongful procedure. Respondents' argument that the Probate Court's findings in relation to the concealment action constitute an affidavit is invalid. Those findings were not based on personal knowledge of specific facts, subject to an independent review. The findings are general and do not describe any property taken from relator. Prejudgment attachment is not a proceeding that allows the Judge to be both the one presenting the facts and the one deciding whether the facts were sufficient to meet the constitutional requirements for a prejudgment attachment. This would be akin to a Judge filing an affidavit for a search warrant and then deciding that it was sufficient. Clearly, the actions of the Probate Judge resulted in the issuance of an unconstitutional prejudgment order of attachment." See, also, R.C. 2715.03 and 2715.044.

{¶ 25} As previously noted, proceedings in probate court are restricted to those actions permitted by statute and the Constitution. *Corron*, 40 Ohio St.3d 75,

531 N.E.2d 708, at syllabus. Because neither statute nor the Constitution permitted appellants' prejudgment attachment of Mrs. Goldberg's personal property, the court of appeals properly granted the writ of prohibition to vacate the prejudgment attachment order and to cause the property to be returned to Mrs. Goldberg at appellants' expense.

{¶ 26} Based on the foregoing, appellants patently and unambiguously lacked jurisdiction to issue their prejudgment attachment order. Therefore, albeit for reasons additional to and different from those expressed by the court of appeals, we affirm the judgment granting the writ of prohibition.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

PFEIFER and LUNDBERG STRATTON, JJ., dissent.

_____

**LUNDBERG STRATTON, J**., **dissenting.**

{¶ 27} I disagree with the majority's judgment that the probate court patently and unambiguously lacked jurisdiction to attach Goldberg's assets pursuant to R.C. 2109.50.

{¶ 28} The majority relies primarily on two bases for its decision: (1) R.C. 2109.50 does not confer jurisdiction on a probate court to bring a concealment proceeding where wrongful death proceeds are the subject of the investigation, and (2) R.C. 2109.50 does not authorize attachment of property.

A. Wrongful Death Proceeds are Subject to Concealment Proceedings

{¶ 29} The probate court may, *sua sponte*, bring a concealment proceeding "against any person suspected of having concealed, embezzled, or conveyed away * * * any moneys, chattels, or choses in action of such estate." R.C. 2109.50. The majority relies upon *U.S. Fid. & Guar. Co. v. Decker* (1930), 122 Ohio St. 285, 287, 171 N.E. 333, 334, in holding that proceeds from a wrongful death settlement are not "assets of the estate of the decedent" for purposes of bringing a concealment

action. The court in *Decker* reasoned that proceeds from a wrongful death action are not assets of the decedent's estate because they are not subject to the same laws of distribution as the estate assets.

**{¶ 30}** I agree that under *Decker,* wrongful death proceeds are not estate assets, and under the *Decker* rationale, proceeds from a wrongful death action would not be subject to a concealment proceeding. However, R.C. 2109.50 also provides that a concealment proceeding may be initiated regarding a chose in action that pertains to an estate. A chose in action is "[t]he right to bring an action to recover a debt, money, or thing." Black's Law Dictionary (7 Ed.1999) 234. A wrongful death action is a chose in action. *In re Estate of Arduino* (C.P.1909), 9 Ohio N.P.(N.S.) 369, 20 Ohio Dec. 461; *Bucyrus Steel Castings Co. v. Farkas* (C.P.1914), 15 Ohio N.P.(N.S.) 609, 27 Ohio Dec. 220. Thus, suspected embezzlement of proceeds from a wrongful death settlement would be subject to a concealment proceeding under R.C. 2109.50 as a "[chose] in action of such estate."

B. The Probate Court has Jurisdiction to Attach the Assets

**{¶ 31}** The majority holds that the probate court lacked jurisdiction to attach Goldberg's property because it failed to comply with the statutory prerequisites of R.C. Chapter 2715. Specifically, the majority holds that attachment was improper because there was no pending civil action for recovery of money as is required by R.C. 2715.01(A), and no affidavit was submitted as is required by R.C. 2715.03. The majority finds that a concealment action under R.C. 2109.50 is a quasi-criminal action, and therefore it cannot satisfy the requirement of a pending civil action for recovery of money under R.C. 2715.01 in an attachment proceeding.

**{¶ 32}** The purpose for the requirement that a civil action for money must be pending before an attachment proceeding may commence is to ensure that there is some reasonable basis that the plaintiff has a right to recover the money that he or she seeks to attach. In this case, it appears that none of the defrauded beneficiaries have filed suit against attorney Goldberg, possibly because the

11

probate court was vigorously pursuing the assets. However, probate courts are responsible for ensuring that proceeds from wrongful death actions are properly distributed. See R.C. 2125.02(C) and 2125.03. Further, although a concealment proceeding is not a civil action, its purpose "is to facilitate the administration of estates by summarily bringing into them those assets which rightfully belong there." *In re Estate of Fife* (1956), 164 Ohio St. 449, 58 O.O. 293, 132 N.E.2d 185, paragraph two of the syllabus. Thus, the probate court has an obligation to ensure that proceeds from wrongful death actions reach the proper beneficiaries.

**{¶ 33}** Although there are no civil actions pending against attorney Goldberg with regard to the wrongful death cases, the probate court, pursuant to the R.C. 2109.50 concealment hearing discovered that attorney Goldberg had embezzled proceeds in numerous wrongful death cases. Thus, pursuant to the court's findings, it appears likely that the defrauded beneficiaries have a legal right to recover money from attorney Goldberg. Therefore, I would find that the justification for requiring that a civil action be filed before attachment proceedings commence is absent *in this case* because evidence elicited at the concealment hearing indicates that the defrauded beneficiaries have a right to recover money from Attorney Goldberg.

**{¶ 34}** The majority also finds that no affidavit was submitted as is required by R.C. 2715.03. The affidavit for attachment must contain the nature and amount of the claim, the facts that support attachment, a description of the property sought and its value, the use to which the property is now put if known, the name of the person holding it, and the location of the property. R.C. 2715.03. I would find that evidence garnered at the concealment hearing satisfied the affidavit requirement.

**{¶ 35}** The purpose of prejudgment attachment is to seize assets to satisfy a potential judgment so the assets cannot be disposed of in the interim. To prevent the probate court from attaching property *in this situation* because no civil action is pending and no affidavit has been filed would prohibit the court from meeting its

12

responsibility to ensure that wrongful death proceeds are properly distributed and would potentially permit attorney Goldberg to dispose of or hide assets. To interpret R.C. 2715.01 through 2715.03 otherwise would yield an absurd result. Statutes are presumed to yield a just and reasonable result. R.C. 1.47(C). Thus, *in this case*, I would find that the probate court did not patently and unambiguously lack jurisdiction to attach Goldberg's property despite the lack of a pending civil action and lack of an affidavit.

### C. Writ of Prohibition not Warranted

{¶ 36} For a writ of prohibition to issue, a court must find (1) the lower court is about to exercise judicial authority, (2) the exercise of that authority is not authorized by law, and (3) the relator possesses no other adequate remedy in the ordinary course of the law if the writ of prohibition is denied. *State ex rel. Keenan v. Calabrese* (1994), 69 Ohio St.3d 176, 178, 631 N.E.2d 119, 121. "[A] writ of prohibition 'tests and determines "solely and only" the subject matter jurisdiction' of the lower court." *State ex rel. Tubbs Jones v. Suster* (1998), 84 Ohio St.3d 70, 73, 701 N.E.2d 1002, 1006, quoting *State ex rel. Eaton Corp. v. Lancaster* (1988), 40 Ohio St.3d 404, 409, 534 N.E.2d 46, 52. However, where a court patently and unambiguously lacks jurisdiction to act, a writ of prohibition may issue even where an adequate remedy in the ordinary course of the law exists. *State ex rel. Corn v. Russo* (2001), 90 Ohio St.3d 551, 554, 740 N.E.2d 265, 268.

{¶ 37} The majority holds that even if the probate court had jurisdiction to attach property, it patently and unambiguously acted in excess of that jurisdiction when it failed to comply with the statutory or constitutional prerequisites for such an order. I believe that such errors are more properly addressed by way of an appeal. Therefore, even assuming *arguendo* that the probate court misapplied the law or applied it in an unconstitutional manner, I do not believe that a writ of prohibition should have issued.

### D. Conclusion

**{¶ 38}** A writ of prohibition is an "extraordinary remedy which is customarily granted with caution and restraint, and is issued only in cases of necessity arising from the inadequacy of other remedies." *State ex rel. Henry v. Britt* (1981), 67 Ohio St.2d 71, 73, 21 O.O.3d 45, 47, 424 N.E.2d 297, 298-299. I do not believe that Mrs. Goldberg has proven that the probate court patently and unambiguously lacked jurisdiction in attaching her property. Further, I believe that Mrs. Goldberg has an adequate remedy in the ordinary course of the law by way of an appeal. Thus, I would deny the writ. Accordingly, I respectfully dissent and would reverse the judgment of the court of appeals.

PFEIFER, J., concurs in the foregoing dissenting opinion.

_____

*Paul Gains*, Mahoning County Prosecuting Attorney, and *Linette S. Baringer*, Assistant Prosecuting Attorney, for appellants.

*Charles E. Dunlap*, for appellee.

_____