OPINION *Page 2 
{¶ 1} This matter came before the Court on an original action for Writs of Mandamus and Prohibition filed by Relators, Roland Sautter and Edward Sickmiller, against Respondents, Judge Lawrence Grey, the Morrow County Zoning Clerk, the Morrow County Zoning Inspector, and Intervening Respondents, CDD Acquisitions, Ltd., Washington Environmental, Ltd, and Harmony Environmental, Ltd. The matter is currently before the Court for consideration of Intervening Respondent's motion to dismiss for lack of standing and failure to state a claim upon which relief may be granted, and/or for summary judgment. Relators filed a response in opposition.
 {¶ 2} Relators in this action are taxpayers and residents of Morrow County. Relators and other members of the Commission for Zoning Against Landfills have been actively opposing the construction of new demolition debris landfill sites in Ohio. In this instance, Relators are seeking to prohibit the construction and operation of any landfills within Morrow County.
 {¶ 3} Respondents CDD Acquisitions, Ltd. ("CDD") is a limited liability company formed for the purpose of licensing, constructing and operating demolition debris facilities. CDD is the entity which owns Harmony Environmental, Ltd. ("Harmony Environmental") and Washington Environmental, Ltd. ("Washington Environmental"). Respondents Eckert and Milligan are Morrow County zoning officials. Respondent Judge Lawrence Grey is a retired Judge who sits by assignment in the Morrow County Common Pleas Court.
 {¶ 4} The pertinent history which led to this original action is as follows. In 2001, CDD began investigating potentially suitable parcels of land within the un-zoned townships of Morrow County for the specific purpose of making applications to locate *Page 3 
and license new construction and demolition debris facilities. During the investigations, CDD spent substantial amounts of time and money to conduct evaluations of state statutory and administrative regulation requirements, soil types, aquifer designations and locations, and flood plain locations in preparation for both the location and application for licensure of two facilities. In June and July of 2003, CDD's subsidiaries, Harmony Environmental and Washington Environmental obtained options to purchase un-zoned property in Harmony and Washington Townships.
 {¶ 5} After obtaining the options to purchase, both Harmony Environmental and Washington Environmental filed applications with the Morrow County Health Board (MCH Board) for demolition debris facility operation licenses. Harmony Environmental filed its application on August 11, 2003 and Washington Environmental filed its application on August 18, 2003.
 {¶ 6} On August 20, 2003, the Morrow County Commissioners passed a resolution entitled "Resolution Adopting Zoning and Ordering an Election". Essentially, the Board of Commissioners enacted a resolution adopting a previously submitted 1990 zoning plan and asked the Morrow County Board of Elections to resubmit the zoning plan to the voters for county-wide approval in the November 4, 2003, general election.[1] At the November 4, 2003, general election, 6 out of 15 townships, including Harmony and Washington Townships, voted to approve county-wide zoning and prohibit the construction and operation of demolition debris facilities. On November 17, 2003, the Board of Commissioners adopted a resolution to "grandfather zoning issues" until December 3, 2003, in the six (6) townships that adopted the zoning resolution. *Page 4 
 {¶ 7} In response to the Commissioners' resolution to adopt county-wide zoning prohibiting landfills, on August 24, 2004, CDD, Harmony Environmental and Washington Environmental filed a declaratory judgment action in the Morrow County Court of Common Pleas against the Morrow County Board of Commissioners, Olen Jackson, Don Staley, Jean McClintock and Jean McClintock individually.[2] Judge Lawrence Grey presided over the matter by assignment. In the declaratory judgment action, the demolition debris companies sought to have the county-wide zoning regulations declared invalid in their entirety or inapplicable to the CDD's parcels pursuant to alleged statutory defects in the zoning enactment, at common law and on constitutional grounds.
 {¶ 8} Meanwhile, on February 27, 2004, after conducting an evidentiary hearing, the MCH Board denied both Harmony Environmental's and Washington Environmental's applications for operating licenses. Harmony Environmental and Washington Environmental subsequently appealed the MCH Board decision to the Environmental Review Appeals Commission (ERAC). On November 18, 2004, the ERAC vacated the decision of the MCH Board. On December 16, 2004, the MCH Board appealed the ERAC decision to the 10th District Court of Appeals. On June 23, 2005, upon appeal, the 10[fth] District Court of Appeals affirmed the ERAC decision and the application was again remanded for further review before the MCH Board.
 {¶ 9} On July 1, 2005, state legislation became effective which placed a 6-month moratorium on the licensure of new construction of demolition debris facilities in Ohio. On December 23, 2005, H.B. 397 became effective which modified the July 1[fst] legislation to grandfather landfill companies who were actively in the process of seeking *Page 5 
demolition debris operation licensure at the time of the moratorium. Upon review, on February 6, 2006, the Environmental Protection Agency (EPA) determined that the Harmony Environmental operation license application and the Washington Environmental operation license application qualified for the "grandfather provision" of H.B. 397 and instructed the MCH Board to continue with the application process with a view to either grant or deny the license after the 6-month moratorium had expired. On February 24, 2006, the MCH Board appealed the EPA decision to the ERAC.
 {¶ 10} In July of 2005, counsel for the Board of Commissioners initiated settlement discussions to resolve the declaratory judgment litigation. Between July and November of 2005, numerous written communications were exchanged in an effort to reach a resolution. On November 7, 2005, the three commissioners met at a regularly scheduled public board meeting to discuss the terms of a proposed settlement agreement. Also present were the Board's privately retained counsel and the Morrow County Prosecutor. After a discussion, and by individual roll call vote, the three commissioners unanimously approved and assented to the proposed settlement. Upon the advice of both private counsel and the Morrow County Prosecutor, the approval of the three Commissioners was not formally documented by resolution. The Commissioners further designated Commissioner Jackson to represent the Board and appear before the trial court to execute the settlement agreement. That same date, Commissioner Jackson appeared in open court, verified his authority to act pursuant to the vote of the Board, approved the resolution and signed the agreed settlement entry on behalf of the Board of Commissioners.
 {¶ 11} On November 7, 2005, by judgment entry, Judge Grey adopted and approved the settlement and granted declaratory judgment in favor of the CDD, *Page 6 
Harmony Environmental and Washington Environmental. Pursuant to the parties' settlement agreement, Judge Grey held that the Morrow County zoning resolution was void and inapplicable as to the Harmony and Washington Township parcels. Specifically, Judge Grey found that the zoning resolution was void and inapplicable as being in conflict with the general law of Ohio as contained in Chapter 3714 of the Ohio Revised Code. Judge Grey also held that since the companies held vested interests in the properties prior to the enactment of the zoning resolution, the zoning resolutions were void as being contrary to the provisions of the Ohio Constitution. Judge Grey's final decision was neither vacated nor appealed.
 {¶ 12} On April 17, 2006, in the appeal pending before the ERAC, the MCH Board and CDD reached a settlement agreement whereby the MCH Board agreed to approve a demolition debris operating license for Washington Environmental solely, and in return, CDD agreed to withdraw the Harmony Environmental operating license application for further consideration. The parties further prepared an agreed consent entry to amend the declaratory judgment decision entered by Judge Grey to exclude the Harmony Township parcel. To date, the agreed consent entry has not been adopted and incorporated by the Morrow County Court of Common Pleas in the declaratory judgment action.
 {¶ 13} On May 4, 2006, Relators filed this original action. It appears that CDD's settlement of the declaratory judgment action with the Commissioners, the trial court's grant of declaratory judgment, and the settlement agreement with the MCH Board granting licensure approval, precipitated the filing of Relators' writ petition. In the writ Petition, Relators further argue that the Commissioners' settlement agreement in the declaratory judgment action is unlawful and void for failure to comply with the statutory *Page 7 
mandates provided for in Chapters 305, and 307 of the Ohio Revised Code. Finally, Relators argue, that the settlement agreement for licensure approval by the MCH Board seeks to reaffirm an otherwise unlawful and void act. Relators, therefore, move this Court for writs of mandamus and prohibition, to compel the trial court to vacate what they claim to be a void declaratory judgment, prohibit the trial court from adopting and incorporating further settlement agreements by the parties as to future operating licensure, and compel the zoning clerk to enforce the existing zoning regulations by prohibiting any demolition debris facilities in Morrow County.
 {¶ 14} On May 31, 2006, the Morrow County Commissioners passed resolution 06-R-0349, captioned, "A Resolution to Document the Assent to and to Ratify the Judgment Entry in the Matter of CDD Acquisitions,Ltd., et al. v. Morrow County Board of Commissioners, et al." By resolution, the Commissioners officially adopted the roll call decision of November 7, 2005, to enter into a settlement agreement in the declaratory judgment action before Judge Grey.
 {¶ 15} The matters presently before this Court include: (1) Intervening Respondents' motion to dismiss for Relators' alleged lack of standing; (2) Intervening Respondent's motion to dismiss pursuant to Civ.R.12(B)(6), and Civ.R.12(C); and (3) in the alternative Intervening Respondent's motion for summary judgment.
 {¶ 16} Initially, Intervening Respondents argue that the writ petition should be dismissed for lack of standing and failure to comply with R.C.309.13. In response, Relators argue that they have taxpayer standing and that complete compliance with R.C. 309.13 would have amounted to a "vain act". We agree.
 {¶ 17} Standing can be acquired by one's status as a taxpayer and conferred by statute. State, ex rel. Dann v. Taft, 110 Ohio St.3d 252,254, 2006-Ohio-3677. The Ohio *Page 8 
Supreme Court has defined "taxpayer" as "any person who, in a private capacity as a citizen, elector, freeholder or taxpayer, volunteers to enforce a right of action on behalf of and for the benefit of the public." State ex rel. Nimon v Springdale (1966), 6 Ohio St. 2d 1,215 N.E.2d 592, paragraph two of syllabus. A taxpayer action may be maintained by a party in a private capacity to enforce the right of the public to the performance of a public duty. State ex rel. Nimon vSpringdale, 6 Ohio St. 2d at 4.
 {¶ 18} Statutorily, R.C. 309.12 confers authority on the county prosecutor to bring suit on behalf of the public to prevent the execution of a contract entered in contravention of the law. Additionally, pursuant to R.C. 309.13, a taxpayer has standing to pursue the same action when the taxpayer's aim is to benefit the county public as if the suit had been brought by the prosecuting attorney. However, pursuant to R.C. 309.13, standing is not conferred until the taxpayer shows that the prosecuting attorney has been contacted in writing, has been requested to act on the public's behalf, and has failed to act. These threshold requirements may be deemed waived if the circumstances indicate that it would have been "unavailing" or "futile" for the taxpayer to have made the initial request of the prosecutor. See, State ex rel. White v. City of Cleveland (1973), 34 Ohio St.2d 37,295 N.E.2d 665, State ex rel. Nimon v Springdale, supra, and, Int'l Assoc. of Firefighter Local No. 136 v. City of Dayton, 157 Ohio App.3d 236,2004-Ohio-2728, 810 N.E.2d 457.
 {¶ 19} In this case, by stipulation, the parties agree that Relators are taxpayers and residents of Morrow County. Relators claim to be pursuing this original action in order to protect the public interest in having the Morrow County Commissioners comply with the statutorily mandated procedures set forth in R.C. 305 and 307 prior to entering the settlement agreement. Relators also seek to compel the zoning officials to disregard what they argue is a void declaratory judgment and enforce the existing zoning regulations.
 {¶ 20} Furthermore, the record reflects that the Morrow County Prosecutor actively participated in the declaratory judgment action settlement negotiations, appeared in court while the agreement was executed, and advised the Commissioners that a resolution to enter into the settlement agreement was not necessary. Dep. of Stanley at 50-51. The prosecutor's actions clearly indicated a position contrary to the Relators' claim and effectively showed that a written request would have been futile. For these reasons, the Court finds that Relators have exhibited taxpayer standing pursuant to R.C. 309.13 to pursue this original action.
 {¶ 21} A motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Civ.R. 12 (B)(6), and a motion for judgment on the pleadings pursuant to Civ.R.12(C), may be granted where no material factual issues exist. However, it is axiomatic that a motion for judgment on the pleadings is restricted solely to the allegations contained in those pleadings. Furthermore, for purposes of the motion all factual allegations in the complaint are deemed admitted and all reasonable inferences are made in favor of the nonmoving party.Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192,532 N.E.2d 753, 756. Flanagan v. Williams (1993), 87 Ohio App.3d 768,623 N.E.2d 185. See, also, Nelson v. Pleasant (1991), 73 Ohio App.3d 479, 481,597 N.E.2d 1137; In Estate of Heath v. Grange Mutual Casualty Company, Delaware App. No. 02CAE05023, 2002-Ohio-5494; Carver v. Mack, Richland App. No. 2005CA0053, 2006-Ohio-2840.
 {¶ 22} In this case, upon examining the matter on the face of the amended petition for writs of mandamus and prohibition, the Court finds, that the issues before *Page 10 
the Court, go beyond the four corners of the complaint and answer, and are therefore appropriate for review under summary judgment. Accordingly, the Court shall consider the merits of Respondent's motion for summary judgment.
 {¶ 23} Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex. rel. Parsons v. Fleming (1994), 68 Ohio St.3d 509, 511,628 N.E.2d 1377, 1379, citing Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274."
 {¶ 24} In order to be entitled to the issuance of a writ of mandamus, the Relator must demonstrate: (1) a clear legal right to the relief prayed for; (2) a clear legal duty on the respondent's part to perform the act; and, (3) that there exists no plain and adequate remedy in the ordinary course of law. State ex rel. Master v. Cleveland (1996),75 Ohio St.3d 23, 26-27, 661 N.E.2d 180; State ex rel. Harris v Rhodes
(1978), 5 Ohio St.2d 41, 324 N.E.2d 641, citing State ex rel.NationalCity Bank v. Bd of Education (1977) 520 Ohio St.2d 81, 369 N.E.2d 1200. Mandamus may not be used to collaterally attack a judgment of an inferior court unless the court was without jurisdiction to render the judgment. See, State ex rel. Inland Properties Co. v. Court ofAppeals (1949), 151 Ohio St. 174, 177, 84 N.E.2d 922 and State, ex rel. Ballard v. O'Donnell (1999), 50 Ohio St.3d 183, 553 N.E.2d 650, paragraph two of syllabus. *Page 11 
 {¶ 25} In order for a writ of prohibition to issue, the relator must prove that: (1) the lower court is about to exercise judicial authority; (2) the exercise of authority is not authorized by law; and, (3) the relator has no other adequate remedy in the ordinary course of law if a writ of prohibition is denied. State ex rel. Keenan v. Calabrese (1994),69 Ohio St.3d 176, 178, 631 N.E.2d 119. A writ of prohibition, regarding the unauthorized exercise of judicial power, will only be granted where the judicial officer's lack of subject-matter jurisdiction is patent and unambiguous. Ohio Dept. of Adm. Serv., Office of Collective Bargainingv. State Emp. Relations Bd. (1990), 54 Ohio St. 3d 48, 562 N.E.2d 125. Where an inferior court patently and unambiguously lacks jurisdiction over the cause, prohibition will lie both to prevent the future unauthorized exercise of jurisdiction and to correct the results of prior actions taken without jurisdiction. State ex rel. Goldberg v.Mahoning Cty. Probate Court (2001), 93 Ohio St.3d 160, 162,753 N.E.2d 192
 {¶ 26} Absent a patent and unambiguous lack of jurisdiction, a court having general subject-matter jurisdiction can determine its own geographic jurisdiction, and a party challenging the court's jurisdiction has an adequate remedy at law by appeal. Whitehall ex rel.Wolfe v. Ohio Civ. Rights Comm. (1995), 74 Ohio St.3d 120, 123-124,656 N.E.2d 684, 686. Neither mandamus nor prohibition will issue if the party seeking extraordinary relief has an adequate remedy in the ordinary course of law. State ex rel. Ahmed v. Costine,103 Ohio St.3d 166, 2004-Ohio-4756, 814 N.E.2d 865.
 {¶ 27} "Jurisdiction has been described as `a word of many, too many, meanings.'" Pratts v. Hurley, 102 Ohio St.3d 81, 88, 2004-Ohio-1980,806 N.E.2d 992, quoting United States v. Vanness (C.A.D.C. 1996),85 F.3d 661, 663, fn. 2. Because the *Page 12 
term "jurisdiction" is used in various contexts and often is not properly clarified, misinterpretation and confusion has resulted.Pratts v. Hurley, 102 Ohio St.3d at 88.
 {¶ 28} "`Jurisdiction' means `the courts' statutory or constitutional power to adjudicate the case.' "Pratts v. Hurley, 102 Ohio St.3d at 83, quoting Steel Co. v. Citizens for a Better Environment (1998),523 U.S. 83, 89, 118 S.Ct. 1003 (emphasis omitted); Morrison v. Steiner (1972),32 Ohio St.2d 86, 87, paragraph one of the syllabus; see, also, In reJ.J., 111 Ohio St.3d 205, 207, 2006-Ohio-5484, 855 N.E.2d 851. The term "jurisdiction" "encompasses jurisdiction over the subject matter and over the person." Pratts v. Hurley, 102 Ohio St.3d at 83, citingState v. Parker, 95 Ohio St.3d 524, 529, 2002-Ohio-2833, 769 N.E.2d 846. (Cook, J., dissenting).
 {¶ 29} "Because subject-matter jurisdiction goes to the power of the court to adjudicate the merits of a case, it can never be waived and may be challenged at any time." Pratts v. Hurley, 102 Ohio St.3d at 83, citing United States v. Cotton (2002), 535 U.S. 625, 630,122 S.Ct. 1781; State ex rel. Tubbs Jones v. Suster (1998), 84 Ohio St.3d 70, 75, reconsideration denied (1999), 84 Ohio St.3d 1475. A distinction exists between a court that lacks subject-matter jurisdiction over a case and a court that improperly exercises subject-matter jurisdiction once conferred upon it. Pratts v. Hurley, 102 Ohio St.3d at 83-84.
 {¶ 30} Distinguishing between subject-matter jurisdiction and jurisdiction over a particular case is important "because`" `[i]t is only where the trial court lacks subject matter jurisdiction that its judgment is void; lack of subject matter jurisdiction over the particular case merely renders the judgment voidable'" `"In reJ.J., 111 Ohio St.3d at 207, quoting Pratts v. Hurley,102 Ohio St.3d at 83, quoting State v. Parker, 95 Ohio St.3d at 529 (Cook, J., dissenting), quoting State v. Swiger (1998), *Page 13 125 Ohio App.3d 456, 462, 708 N.E.2d 1033. "Jurisdiction over the particular case," as the term implies, involves " ` "the trial court's authority to determine a specific case within that class of cases that is within its subject matter jurisdiction." ` " Pratts, 102 Ohio St.3d at 83 quotingSwiger, 125 Ohio App.3d at 462.
 {¶ 31} A void judgment is one rendered by a court lacking subject-matter jurisdiction or the authority to act. Pratts v.Hurley, 102 Ohio St.3d at 84; State v. Beasley (1984), 14 Ohio St.3d 74,75, 471 N.E.2d 774. A voidable judgment, on the other hand, is a judgment rendered by a court having jurisdiction/authority and, although seemingly valid, is irregular and erroneous. State v. Montgomery, Huron App. No. H-02-039, 2003-Ohio-4095.
 {¶ 32} A voidable judgment is one rendered by a court having jurisdiction and although seemingly valid, is irregular and erroneous. Black's Law Dictionary (7 Ed. 1999) 848. A voidable judgment is subject to direct appeal, R.C. 2505.03(A), Article IV, Section 3(B)(2), Ohio Constitution, and to the provisions of Civ.R. 60(B). A Civ.R. 60(B) application for relief must be made to the trial court that rendered the judgment from which relief is sought.
 {¶ 33} As the Eleventh District Court of Appeals noted in Clark v.Wilson (July 28, 2000), Trumbull App. No. 2000-T-0063: "The distinction between `void' and `voidable' is crucial. If a judgment is deemed void, it is considered a legal nullity which can be attacked collaterally. Conversely, if a judgment is deemed voidable, it will have the effect of a proper legal order unless its propriety is successfully challenged through a direct attack on the merits. * * * " "Where it is apparent from the allegations that the matter alleged is within the class of cases in which a particular court has been empowered to act, jurisdiction is present. Any subsequent error in the proceedings is *Page 14 
only error in the `exercise of jurisdiction' as distinguished from the want of jurisdiction in the first instance." State v Filiaggi (1999),86 Ohio St.3d 230, 240, 714 N.E.2d 867, quoting In re Waite (1991), 188 Mich. App. 189, 200, 468 N.W.2d 912.
 {¶ 34} In this case, the Relator argues that the Commissioners' failure to comply with R.C. 305.25 and 307.561 renders the trial court's declaratory judgment void. Both statutes set forth the procedure the commissioners must follow to execute a binding contract or settlement agreement. Ohio Revised Code Section 305.25 states in pertinent part as follows: "No contract entered into by the board of county commissioners, or order made by it, shall be valid unless it has been assented to at a regular or special session of the board, and entered in the minutes of its proceedings by the county auditor or the clerk of the board." Where a contract has been entered into by a county without compliance with this statute, it is clear the contract is completely void and not merely voidable. Communicare, Inc. v. Wood County Board of Commissioners,161 Ohio App. 3d 84, 2005-Ohio-2348, 829 N.E.2d 706.
 {¶ 35} R.C. 307.561 states in pertinent part, "a county may settle any court action by a consent decree or court-approved settlement agreement which may include an agreement to re-zone any property involved in the action * * * and may also include county approval of a development plan for any property involved in the action as provided by the decree or court approved settlement agreement, provided that the court makes specific findings of fact that notice has been properly made pursuant to this section and the consent decree or court-approved settlement agreement is fair and equitable."
 {¶ 36} In accordance with R.C. 305.25 and 307.561, the Commissioners met at a regular public session to discuss the terms of the settlement agreement. At the public session, and by verbal roll call, the commissioners unanimously assented to the terms *Page 15 
of the settlement agreement. Thereafter the commissioners executed a formal resolution thereby complying with the statutory elements empowering them to enter into a binding settlement agreement. Upon formal resolution the previously void settlement agreement became an effective contract. Judge Grey's declaratory judgment was the final order which could have been appealed at the time of filing.
 {¶ 37} There is no question that Judge Grey, acting on behalf of the Morrow County Court of Common Pleas, had subject matter jurisdiction over the Intervening Respondent's declaratory judgment action and the parties. Respondents' assertion that the Commissioner's failure to follow the procedures set forth in R.C. 305 and 307 may arguably make the settlement agreement void, however, these procedural deficiencies, simply makes the trial court's subsequent judgment voidable and subject to appeal or 60(B) review. Furthermore, the resolution of the commissioners, although subsequent to the trial court's judgment, non-the-less cures the defect in the procedural requirements for the settlement agreement's execution. Accordingly, Respondents' assertion that the settlement agreement is void only serves to make the trial court's judgment voidable an issue which became moot, once the roll call vote was formalized by resolution. Thus, the trial court's grant of declaratory judgment entry is not void and Respondents, therefore, have or had an adequate remedy at law pursuant to Civ.R.60(B) or by direct appeal.
 {¶ 38} For these reasons, the Court hereby finds that no genuine issue of material facts remain to be litigated, that the Intervening Respondents' are entitled to judgment as a matter of law in that it appears that reasonable minds can only come to one conclusion, and viewing the evidence in most strongly in favor of the Relators, that conclusion is to grant summary judgment in favor of the Respondents. Accordingly, *Page 16 
Respondents' motion for summary judgment is hereby granted as to all parties and the matter before this Court is dismissed.
 {¶ 39} MATTER DISMISSED.
 By: Farmer, J., Gwin, P.J. and Wise, J. concur. *Page 17 
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the Writs for Mandamus and Prohibition filed by Relators Roland Sautter and Edward Sickmiller are dismissed. Costs taxed to Relators.
[1] County-wide zoning had been first placed on the May 8, 1990, primary ballot for Morrow County. The original Zoning plan was only ratified by Gilead Township.
[2] CDD Acquisitions, Ltd. et al. v. Morrow County Board of Commissioners, et al. v. Morrow County Court of Common Pleas, Case Number 2004-CV-00275. *Page 1